555 S.E.2d 413

**Alexandra McPherson EUBANK, Respondent,**

**v.**

**Perry Huston EUBANK, II, Appellant.**

**No. 3401.**

Court of Appeals of South Carolina.

Heard Oct. 2, 2001.

Decided Nov. 5, 2001.

Robert N. Rosen and Donald B. Clark, both of Rosen, Rosen & Hagood, of Charleston, for Appellant.

Cynthia B. Castengera, of Columbia, for Respondent.

HEARN, Chief Judge:

Perry Huston Eubank, II (Husband) appeals from a family court order denying his request to modify or terminate his alimony obligation to Alexandra McPherson Eubank (Wife) because of changed circumstances. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

The parties divorced on November 12, 1991. In its decree, the family court approved and adopted the parties' separation agreement, including the following language:

> [T]he Wife's present support needs are $1,100 per month from the Husband.... [T]he parties agree that for six years following the entering into of this agreement, the Wife's alimony shall be paid by the Husband's assignment of his one-half interest in two notes payable to the parties from Precision Tune.... Beginning January 1, 1998, if the wife is still living and has not remarried the Husband shall resume the direct payment to the Wife of alimony in the amount of $1,100 per month.... **The parties further agree that should Precision Tune ever default on its payment of these notes or due to any other change of circumstances, either party may petition the Court for modification.**

(emphasis added).

Precision Tune made payments on the notes for approximately eighteen months and then defaulted in April 1993. Wife contacted Husband about the default, and he discovered the franchise was bankrupt. Wife then filed a "Motion for Clarification of Terms of Spousal Support in Final Order and Decree of Divorce." In her motion and supporting affidavit, Wife alleged she had not received support payments since the default and asked the family court to order Husband to pay her $1,100 per month in alimony.

In December 1995, the family court heard Wife's motion. Neither party attended the hearing, but both were represented by counsel. The family court issued an Amended Temporary Order on April 11, 1996, providing in its entirety as follows:

This matter came before me on post trial motion. Attorneys for the parties presented an agreement when the case was called. I have reviewed the agreement and find it fair to all involved.

It is, therefore,

Ordered that beginning January 1, 1996, the [Husband] shall pay the [Wife] the sum of $600.00 per month in spousal support on the first of each month. This sum shall be paid without prejudice to either parties [sic]. It is further

Ordered that the parties shall attempt to negotiate a settlement of all of the issues which need resolution within thirty days of the issuance of this order. If an agreement is not reached within that time period, either party may, by summons and complaint, initiate an action to resolve all remaining issues, including but not limited to, the issue of how much, if any, spousal support is past due to [Wife].

This Amended Order issues because of a clerical error in the prior Temporary Order.

In 1999, Wife commenced this action seeking an order holding Husband in contempt for failure to make alimony payments and an award of attorney fees and costs.[1] Husband answered and counterclaimed for a reduction or termination of his alimony obligation, prospectively and retrospectively, based on changed circumstances. Specifically, Husband asserts he is entitled to relief from his alimony obligation due to substantial inheritances received by Wife after the Final Order and Amended Temporary order were issued and his own diminished financial circumstances.

The family court found Husband in contempt for failure to pay alimony, established his alimony arrearage at $18,277.24, and awarded Wife $5,000 in attorney fees and costs. The family court further found husband's alimony obligation to be $600 per month as set in the Amended Temporary Order and declined to modify or terminate this amount. This appeal followed.

---

1. Wife also alleged husband failed to make court ordered child support payments; however, the court's ultimate decision regarding Husband's child support arrearage and prospective obligation is not at issue in this appeal.

## STANDARD OF REVIEW

In appeals from the family court, this court may find facts in accordance with its own view of the preponderance of the evidence. *Murdock v. Murdock*, 338 S.C. 322, 328, 526 S.E.2d 241, 244–45 (Ct.App.1999). The question of whether to increase or decrease support due to changed circumstances is within the sound discretion of the family court and such conclusions will not be disturbed on appeal absent an abuse of discretion. *Brunner v. Brunner*, 296 S.C. 60, 64, 370 S.E.2d 614, 617 (Ct.App.1988). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000).

## DISCUSSION

Husband argues the family court erred in concluding that a downward modification or termination of his alimony obligation is unwarranted. We agree.

An award of periodic alimony may be modified pursuant to South Carolina Code Annotated section 20–3–170 (1985). That statute provides:

> Whenever [a spouse] ... has been required to make his or her spouse any periodic payments of alimony and the circumstances of the parties or the financial ability of the spouse making the periodic payments shall have changed since the rendition of such judgment, either party may apply to the court which rendered the judgment for an order and judgment decreasing or increasing the amount of such alimony payments or terminating such payments....

To justify modification or termination of an alimony award, the changes in circumstances must be substantial or material. *Thornton v. Thornton*, 328 S.C. 96, 111, 492 S.E.2d 86, 94 (1997).

Here, Wife's net worth greatly exceeded Husband's at the time of the final hearing due to post-divorce inheritances. On the deaths of her mother in 1994 and her aunt in 1996, Wife received substantial assets. Wife testified she received a $100,000 distribution from her mother's estate "within a month

or so after her death." Later, Wife received additional disbursements, including a $350,000 distribution from her aunt's estate in 1996. The parties stipulated that Wife's estimated net worth at the time of trial was approximately $1.3 million, including: (1) a home with an estimated fair market value of $700,000; (2) securities valued at $329,800; (3) "other property" valued at $163,000; and (4) $61,000 in savings. According to her financial declaration, Wife receives an average monthly income ranging from $2,196.78 to $2,496.00 in dividends and interest and rents of $300. At the time of trial, Husband's assets totaled approximately $13,500, and he earned an annual income of $60,000.

In determining Wife's post-divorce inheritances did not entitle Husband to a reduction or termination of his alimony obligation, the family court reasoned that at the time of the Amended Temporary Order, "[Wife] had already received the substantial real property she now owns and had already received personal property in cash from her mother. Husband was aware at the time of the 1996 agreement of the majority of the substantial inheritance now possessed by [Wife]."

Our own review of the record and applicable case law convinces us the family court erred in limiting its consideration of changed circumstances to events occurring after 1996.[2] The Amended Temporary Order was simply that, a

---

2. Wife asserts Husband failed to properly preserve this issue through a post-trial motion made pursuant to Rule 59(e), SCRCP. We disagree. Both parties entered evidence at trial, without objection, regarding their respective financial circumstances both before and after the 1996 order, and the family court made specific findings regarding the effect of the order on the viability of Husband's counterclaim. Thus, the issue was raised to and ruled on by the family court. The "raised to and ruled on" rule of error preservation requires only a ruling, not necessarily a favorable one. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 77, 497 S.E.2d 731, 734 (1998) ("Post-trial motions are not necessary to preserve issues that have been ruled upon at trial; they are used to preserve those that have been raised to the trial court but not yet ruled upon by it.").

Wife further asserts the issue is not properly presented on appeal because it is not set forth in the statement of the issues on appeal. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal."). Husband's statement of the issues on appeal includes the following

temporary agreement reached in contemplation of further negotiations and/or judicial proceedings. Because the parties did not intend for the 1996 order to serve as a final adjudication of their rights and responsibilities, we hold the family court erred in treating it as such for purposes of determining whether Husband was entitled to modification or termination of his support obligation. We believe the family court should have considered changes in the parties' circumstances occurring after the 1991 divorce decree.

■■■ Wife argues Husband is not entitled to a reduction or termination of his alimony obligation because he knew that her family had substantial assets and she would eventually receive an inheritance. We disagree. "Generally, changes in circumstances within the contemplation of the parties at the time the decree was entered do not provide a basis for modifying either an alimony allowance or a child support award." *Calvert v. Calvert*, 287 S.C. 130, 139, 336 S.E.2d 884, 889 (Ct.App.1985). However, in applying this general rule, the family court should look not only at whether the parties contemplated the change, but also "most importantly whether the amount of alimony in the original decree reflects the expectation of that future occurrence." *Sharps v. Sharps*, 342 S.C. 71, 78, 535 S.E.2d 913, 917 (2000).

■■■ Here, even if Husband knew before the parties' divorce that Wife would likely receive an inheritance on the deaths of her mother and aunt, the parties could not have ascertained the amount of Wife's inheritances or when she would receive them. The parties' settlement agreement as approved by the family court clearly states that the alimony award is modifiable. The only mention of family property is contained in a separate paragraph in which the parties waive all interest in "trusts established by each parties' [sic] family." Here, Husband has never claimed an interest in Wife's family trusts, but has rather asserted that Wife's inheritance has resulted in a change of circumstances sufficient to merit a

language, "Wife's Inheritance of Over One Million Dollars Constituted A Substantial and Material Change of Circumstances Warranting The Termination Of Husband's Alimony Obligation." We hold this statement when read in conjunction with Husband's argument adequately raised the issue.

reconsideration of her alimony award. Accordingly, we find that the original decree does not reflect the expectation of Wife's inheritance and that the family court should have considered it in making his determination on Husband's counterclaim for reduction or termination of alimony.

We further agree with Husband that the family court erred in finding *sua sponte* that Husband was not entitled to a modification of his alimony obligation due to the doctrine of unclean hands.[3] The family court found that although Husband's income had decreased, Husband changed jobs several times, remarried, and could invest $433.33 per month into his retirement account. Based on these findings, the family court concluded Husband's precarious financial status was due to his own actions and "[i]t would be inequitable to grant [modification of Husband's alimony obligation] inasmuch as [Husband] comes before the court with unclean hands."

In our view, this finding is dicta and not an additional sustaining ground for the court's decision as urged by Wife. Moreover, we find the family court's legal reasoning unsound on this issue. The relevant inquiry before the court was whether there had been a material change in either party's financial circumstances. Even if Husband's own actions or inactions resulted in his financial misfortune, section 20–3–170 requires consideration of changes in both parties' economic circumstances. Thus, the family court was statutorily obliged to consider Wife's changed circumstances as well. Accordingly, we reverse and remand this matter for the family court to determine any modification or termination of Husband's alimony obligation.[4]

Finally, Husband asserts the family court erred in failing to award him attorney fees and costs on his counter-

---

3. Wife at no point raised this equitable defense.

4. Husband also asserts the family court should have considered Wife's earning capacity as a licensed professional counselor in determining her need for continued support. Because we find the family court erred in failing to modify or terminate Husband's support obligation, we need not address whether this particular factor compounded the error. On remand, the family court should consider Wife's earning capacity in assessing the parties' changed circumstances.

claim.[5]  In light of our disposition on the alimony issue, we remand this issue for reconsideration. *See Sexton v. Sexton,* 310 S.C. 501, 503, 427 S.E.2d 665, 666 (1993) (reversing and remanding issue of attorney fees for reconsideration where the substantive results achieved by trial counsel were reversed on appeal).[6]

For the above reasons, we reverse the family court's order and remand the case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

CURETON and HOWARD, JJ., concur.

---

5.  With respect to Wife's contention this argument is not preserved, we find Husband raised this issue in his answer and at the hearing and the trial judge ruled against him.  Thus, no Rule 59(e), SCRCP, motion was necessary to preserve the issue.

6.  The award of attorney fees to Wife in the contempt action was not appealed.  It is therefore the law of the case and must be affirmed. *See Buckner v. Preferred Mut. Ins. Co.,* 255 S.C. 159, 161, 177 S.E.2d 544, 544 (1970) (holding an unchallenged ruling right or wrong is the law of the case and requires affirmance).