THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Gary Gene Melton,       
Appellant,
 
 
 

v.

 
 
 
Deborah J. Melton,       
Respondent.
 
 
 

Appeal From Kershaw County
Rolly W. Jacobs, Family Court Judge

Unpublished Opinion No. 2005-UP-010
Submitted December 1, 2004  Filed January 
 10, 2005

AFFIRMED

 
 
 
Melody Lynn James, of Camden, for Appellant.
Douglas J. Robinson, of Camden, for Respondent.
 
 
 

PER CURIAM:  Gary Gene Melton brought this 
 action against his former wife, Deborah J. Melton, seeking a termination or 
 reduction in alimony based on his substantial change of circumstances.  The 
 family court refused to modify Husbands alimony obligation.  We affirm.  
FACTS
Husband and Wife were divorced in
2001, after thirty-one years of marriage. At the time of the divorce, Husband
had retired from the military and was employed as a bombing range manager for
the Dare County Air Force Bombing Range.  Between his retirement benefits
and his salary as a bombing range manager, Husband's monthly income was
$5,361.  Wife, on the other hand, had a monthly income of approximately
$227, which she earned from rents and from caring for her grandchildren, her
brother, and her father. [1]    The parties agreed Wife was entitled to
half of Husband's retirement benefits, and the family court awarded Wife an
additional $1,000 in alimony per month.

Approximately four months after the divorce, Husband was terminated from his job
at the bombing range.  The month following the loss of his employment,
Husband filed an action with the family court to terminate or reduce his alimony
obligation.  By way of counterclaim, Wife sought an order from the family
court that required Husband to (1) pay his monthly alimony obligation to the
court, (2) submit to a medical exam for life insurance purposes, and (3) pay her
attorney's fees and court costs. A pendente lite hearing was held in November of
2001, and at that time, the family court denied Husband's request for relief
 Two weeks after Husband filed his 
 complaint, Wife filed a rule to show cause, alleging Husband was in contempt 
 of the divorce decree for failing to pay alimony in a timely fashion.  Judge 
 Brooks P. Goldsmith continued the rule to show cause and ordered that it be 
 heard at the same time as the hearing on the merits for Husbands action to 
 reduce or terminate alimony.
 In February of 2002, six months after 
 being terminated from the bombing range, Husband acquired a job at Miller 
 Trophy Room Preservation making ten dollars an hour.  Husband also earned 
 money from renting out a house and large tract of land he owned. 
In March of 2003, a hearing on the
merits was held.   At the hearing, Husband testified that he
received  $2,239 per month from his salary at Miller Trophy, $884 per month
in retirement benefits, and $440 per month in rental income.  Thus, his
total monthly income was $3,563.  On Husband's financial declaration, he
listed $3,767 worth of monthly expenses, which included his monthly alimony
obligation of $1,000.  

The family court found that although the loss of Husband's job was "an
important change," he was not entitled to a reduction in alimony.  The
court explained that Husband had not only replaced a great deal of his lost
income, but also that Husband's expenses had decreased significantly since
alimony had originally been set.  Specifically, the court noted that
Husband no longer paid $125 a month to rent out a mobile home lot; he no longer
paid $1,061.31 a month for his half of the mortgage on and upkeep for the
marital home; he no longer paid $238 a month toward his pension; and he no longer paid $177 a month for life 
 insurance.  Pursuant to its determination not to reduce Husbands alimony, 
 the family court awarded Wife $4,000 in attorneys fees.  However, the court 
 declined to hold Husband in contempt for his failure to make timely alimony 
 payments, noting the late payments occurred after Husband initially lost his 
 job and finding Husbands failure to pay on time was not willful.  
Husband appeals, arguing the family
court erred by not reducing or terminating his alimony and by awarding Wife
attorney's fees. 
 STANDARD OF REVIEW
 The family court has the authority to alter 
 alimony payments upon a proper showing of a change of condition.  S.C. Code 
 Ann. § 20-3-170 (1985).  The modification of alimony is within the sound 
 discretion of the family court and will not be overturned absent an abuse 
 of that discretion.  Riggs v. Riggs, 353 S.C. 230, 236, 578 S.E.2d 
 3, 6 (2003). 
 LAW/ANALYSIS
I.       Reduction or Termination of Alimony
Husband argues the family courts failure 
 to reduce or terminate his alimony was an abuse of discretion for three reasons.  
 First, Husband claims the evidence in the record does not support the courts 
 finding that his financial condition had not substantially or materially changed.  
 Second, Husband argues the family court abused its discretion by focusing only 
 on his circumstances rather than the circumstances of both parties.  Third, 
 Husband alleges the family court erred by considering the Traxler Alimony guidelines 
 when making its decision.  We disagree with all of these arguments.
In regard to his financial condition, Husband 
 alleges his expenses have increased since the divorce, pointing to the $3,767 
 worth of expenses he has listed on his current financial declaration as compared 
 to the $3,484 in monthly expenses he had when alimony was originally set.  However, 
 included in Husbands current financial declaration is his $1,000 alimony obligation.  
 Because the family court was asked to reconsider Husbands alimony obligation, 
 the amount he currently pays in alimony should not be factored in as an expense.   
 After subtracting the $1,000 from the $3,767 in monthly expenses, Husbands 
 monthly expenses are $717 less than they had been when alimony was originally 
 set.  Furthermore, the deductions from Husbands gross pay are less now than 
 they were at the time of the parties divorce because he no longer pays $373 
 per month toward his pension plan. [2]   Thus, Husbands expenses and deductions have 
 been reduced by nearly $1,100 since the parties divorce. 
Pursuant to the original divorce decree, Husband 
 was required to pay Wife $1,000 in alimony in addition to his agreement to pay 
 her half of his retirement benefits, which at the time amounted to $850. After 
 paying these sums to Wife, Husband was left with a gross monthly income of $3,511. 
 [3]   From this monthly income, $373 was deducted to fund his pension. His 
 monthly income therefore was $3,138 before taxes, and his monthly expenses were 
 $3,484, [4] leaving him with a $346 deficit each month.  
 Now that Husband has a lower paying job, his monthly income is  $3,563, [5] and his expenses, including alimony, 
 are $3,794. [6]   Thus, his deficit is only $231 
 per month.  Based on these numbers, and despite the fact that Husbands expenses 
 exceed his income, we agree with the family courts finding that there has been 
 no material change to Husbands financial circumstances.    Eubank v. Eubank, 
 347 S.C. 367, 372, 555 S.E.2d 413, 416 (Ct. App. 2001) (stating that, in order 
 to justify modification or termination of an alimony award, the changes in circumstances 
 must be substantial or material).  
Husband also argues the family court erred by 
 considering only his circumstances and not the circumstances of both parties.  
 We note initially that in Husbands pleadings, the only change in circumstance 
 he specifically listed was his loss of income.  Moreover, the family court did 
 consider the Wifes circumstances and found her income and ability to earn 
 income [had] not changed.  The evidence in the record supports this finding, 
 and we therefore find no error.  
Husband also urges us to reverse the family court 
 because it considered the Traxler alimony guidelines.  Husband asserts this 
 was error because the guidelines are not approved for use for the family court 
 . . . and results are not subject to cross-examination and confrontation by 
 the parties.  Even assuming, without deciding, that the family courts consideration 
 of the guidelines was error, Husband fails to demonstrate how the use of these 
 guidelines prejudiced him.  See Blakely v. Blakely, 249 S.C. 623, 
 625, 155 S.E.2d 857, 858 (1967) (stating that an alimony order will not be reversed 
 unless the alleged error is material and prejudicial to the substantial rights 
 of the complaining party). As shown above, Husbands income and expenses had 
 not materially or substantially changed.  Therefore, regardless of whether the 
 Traxler guidelines were considered, Husband was not entitled to a reduction 
 or termination of his alimony obligation. 
 II.         Attorneys Fees
Husband next argues that the family courts award 
 of attorneys fees should be reversed because of the adverse impact they have 
 on his finances. [7]   We find no error in the family 
 courts award of attorneys fees. 
The award of attorneys fees is a matter within 
 the family courts discretion.  Miles v. Miles, 355 S.C. 511, 520, 586 
 S.E.2d 136, 141  (Ct. App. 2003).  The factors to consider when awarding attorneys 
 fees are (1) the parties ability to pay their own fees, (2) the beneficial 
 results obtained by the attorney, (3) the parties respective financial conditions, 
 and (4) the effect of the fee on each partys standard of living.  E.D.M 
 v. T.A.M, 307 S.C. 471, 476-477, 415 S.E.2d 812, 816 (1992).  In this case, 
 the family court specifically found that Husband had sufficient income as well 
 as a great deal of assets out of which he can pay fees, while [Wife] generates 
 little income and has comparatively modest assets.  
The evidence in the record demonstrates that Husband 
 generates more income than Wife each month.  Furthermore, according to their 
 financial declarations, Husband has nearly $190,000 worth of assets, while Wife 
 has only $35,000 worth of assets.  Thus, we find no error in the family 
 courts decision to award attorneys fees to Wife.
Husband also argues that he should not have to pay 
 for the 2.7 hours Wifes attorney spent working on the contempt action.  We 
 find the family court did not award Wife attorneys fees for these hours.  
Wife requested that her attorney be reimbursed 
 for the 30.8 hours he spent on her entire case, including the contempt action.  
 At her attorneys rate of $150 per hour, Wifes total fees were $4,620.  The 
 family court, however, only awarded Wife $4,000 in attorneys fees.  Thus, Husband 
 was not required to pay for approximately four hours worth of Wifes attorneys 
 fees, which presumably included the 2.7 hours Wifes attorney spent on the contempt 
 action.    
CONCLUSION
We find Husband was not entitled 
 to an alimony reduction or termination because he failed to show a material 
 or substantial change in his financial circumstances.  We further find the family 
 courts award of $4,000 in attorneys fees to Wife was not an abuse of discretion.  
 Accordingly, the order of the family court is
AFFIRMED.
HEARN, C.J., GOOLSBY and WILLIAMS, 
 JJ., concur.

 
 
 [1] In the parties divorce order, the family court noted that [Wife] 
 dropped out of high school in the 10th grade, marrying [Husband] 
 when she was 17 years old.  During the next 14 years, she and the children 
 followed [Husband] from military base to military base . . . .  These moves 
 were not conducive either to building up job skills or retirement funds.  
 However, the court did impute to Wife a monthly income of $922, finding she 
 was capable of working forty hours a week for minimum wage.  

 
 
 [2] In its order, the family court found Husband no longer paid $238 
 per month toward his pension.  However, the financial declaration Husband 
 submitted at the time of the parties divorce lists a $373.45 deduction for 
 Husbands retirement or pension plan.

 
 
 
 [3] Husbands gross monthly income had been $5,361 at the time of the 
 divorce.  Taking away the $1,000 in alimony and the $850 in retirement benefits, 
 his gross monthly income was $3,511.

 
 
 [4] Or, if we were to consider alimony as an expense like Husband does 
 in his current financial declaration, Husbands income immediately after the 
 divorce decree was $4,138 a month and his expenses were $4,484, still leaving 
 a $346 deficit.

 
 [5] Husband makes $2,239 per month at Miller Trophy, 
 $884 per month from his retirement, and $440 per month from rents.

 
 
 [6] We also note that two months after the parties divorce, Husband 
 remarried.  Although Husband admittedly includes some of his new wifes expenses 
 on his financial declaration, he did not in turn include her monthly income 
 of $1,400.

 
 [7] 
 Husband also argues that the award of attorneys fees should be reversed 
 if we reverse the family courts alimony decision.  Because we affirm the 
 family courts decision not to reduce or terminate Husbands alimony, we need 
 not address this issue.  See Futch v. McAllister Towing of Georgetown, 
 Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that appellate 
 court need not address remaining issues when disposition of prior issues is 
 dispositive).