600 S.E.2d 129

**Diane STEFFENSON, Appellant,**

**v.**

**David A. OLSEN, Respondent.**

**No. 3848.**

Court of Appeals of South Carolina.

Heard May 12, 2004.

Decided July 19, 2004.

Rehearing Denied Aug. 19, 2004.

John M. Gulledge, of Troy, for Appellant.

C. Rauch Wise, of Greenwood, for Respondent.

STILWELL, J.:

In this domestic relations action, we must decide whether the trial court erred in (1) interpreting a foreign court's award of retirement benefits to include only those benefits accrued at the time of the divorce and (2) offsetting the award of retirement benefits by the amount of overpaid child support. We affirm in part and reverse in part.

## BACKGROUND

David Olsen (Husband) and Diane Steffenson (Wife) divorced in 1984 in Japan, where Husband was stationed while in the Air Force. They divorced under Japanese proceedings of conciliation. The Japanese order granted Wife custody of the parties' two children and required Husband to pay child support of $250 per month for each child, with support for each child terminating when that child reached 18. Additionally, the order provided:

> 4. [Husband] shall pay [Wife] the amount equal to 15% of the amount of retirement pay, which will be paid to [Husband] at his retirement.

Other than the allocation of retirement pay, the order did not provide for alimony or the distribution of marital property. Wife's attorney represented to the trial court that the Japanese family court does not award alimony, and Wife testified the Japanese family court instructed the parties to divide their real and personal property themselves.

Pursuant to military regulations, the Japanese court order was transmitted to an office that automatically deducted the child support payments from Husband's pay and forwarded them to Wife. The deductions and payments were automatically reduced when the oldest child reached 18, but the department failed to discontinue deductions or payments when the youngest child reached 18. The $250 monthly payments con-

tinued for an additional 25 months. As a result, Husband paid $6250 in child support after the youngest child reached majority.

Husband retired and began receiving retirement pay in 2000. Wife brought this action in South Carolina to enforce the Japanese court order after a dispute arose regarding payment of retirement benefits. In her complaint, Wife asserted the Japanese conciliation procedure requires parties to submit a divorce agreement to the court, which the court adopts and gives formal, judicial sanction equivalent to a divorce decree. In his responsive pleading, Husband stated he was without sufficient information to form a belief regarding the nature of the conciliation procedure.

The court issued an initial order ruling the divorce decree was entitled to recognition and enforcement. Neither party appealed that order.

After a hearing on the merits, the court issued an order acknowledging the parties had reached an agreement that formed the Japanese court's order, but found the terms of the agreement ambiguous. Upon consideration of evidence outside the agreement including the testimony of the parties, the court concluded the parties agreed Wife would receive only 15 percent of Husband's retirement pay that "accumulated during the marriage." The court further found and concluded Husband was entitled to an offset equal to his child support overpayment.

## DISCUSSION

### I. Retirement Benefits

■ Wife argues the court erred in concluding the Japanese divorce decree entitles her to only 15 percent of Husband's retirement pay that had accrued as of the date of their divorce. We agree.

The trial court concluded the terms of the parties' agreement were "not clear or apparent," and thus considered extrinsic evidence in reaching its decision. We, however, conclude the provision in question clearly requires Husband to pay Wife 15 percent of his entire retirement benefits he receives upon retirement.

 "Unambiguous marital agreements will be enforced in accordance with their terms, while ambiguous agreements will be examined in the same manner as other agreements in order to determine the intention of the parties." *Lindsay v. Lindsay,* 328 S.C. 329, 337, 491 S.E.2d 583, 587 (Ct.App.1997). Whether an ambiguity exists must be determined from the language of the agreement. *Id.* If an agreement is clear and unambiguous, its terms should be applied according to their plain and ordinary meaning and consideration of extrinsic evidence to alter that meaning is improper. *C.A.N. Enters. Inc. v. South Carolina Health & Human Servs. Fin. Comm'n,* 296 S.C. 373, 377–78, 373 S.E.2d 584, 586 (1988); *see also Redwend Ltd. P'ship v. Edwards,* 354 S.C. 459, 471, 581 S.E.2d 496, 502 (Ct.App.2003) ("The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument.").

The provision in question clearly requires Husband to pay Wife an amount equal to 15 percent of his retirement pay. Had the parties intended to limit the award to those benefits accrued during the marriage, they could have so provided, and it is not for the trial court or this court to change the terms the parties agreed upon. *See Hardee v. Hardee,* 355 S.C. 382, 387, 585 S.E.2d 501, 503 (2003) ("The judicial function of a court of law is to enforce a contract as made by the parties, and not to rewrite or to distort, under the guise of judicial construction, contracts, the terms of which are plain and unambiguous."); *Charles v. Canal Ins. Co.,* 238 S.C. 600, 608–09, 121 S.E.2d 200, 205 (1961) (holding where a contract's terms are clear, the court's function is to enforce the terms and not to substitute its own judgment for that of the parties).

Husband agrees the retirement award provision is facially clear but contends it contains a latent ambiguity that arose only when his obligation to make payments began upon his retirement. Because the document does not define "retirement pay" or "amount of retirement pay," Husband claims the ambiguity is whether "amount of retirement" refers to the retirement he would have been entitled to had he retired at the rank he held when the parties divorced or whether it was to be based on the rank he achieved by the end of his career.

He also argues it is not clear whether Wife is entitled to a percentage of the gross pay or the net disposable income. Finally, Husband contends allowing Wife to receive 15 percent of his entire retirement benefits "would give [her] the windfall of an additional seventeen years of military service by [Husband]."

In essence, Husband's argument is not that a latent ambiguity is revealed upon application, but rather that he finds a literal application of the provision's terms unfair. However, the court's duty "is to enforce the contract made by the parties regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." *Jordan v. Sec. Group, Inc.*, 311 S.C. 227, 230, 428 S.E.2d 705, 707 (1993). Husband's argument is similar to an argument that the parties have undergone a change of circumstances. However, just as a change of circumstances within the parties' contemplation at the time of the decree does not provide a basis for modifying a support award, Husband cannot argue this agreement should be read differently because his retirement benefits are more than they would have been had he retired at the rank he held when the parties divorced. *See Eubank v. Eubank*, 347 S.C. 367, 374, 555 S.E.2d 413, 417 (Ct.App.2001) (holding change of circumstances within the parties' contemplation at the time of decree not a ground for altering a support award). In fact, the award to Wife of only 15 percent of Husband's retirement pay suggests the parties did anticipate Husband would advance in rank and would be entitled to more retirement pay than that which he had accumulated when the parties divorced. *See id.* (holding a court should apply the contemplated change of circumstances rule by not only determining whether the parties contemplated the change but whether the decree actually reflects the expectation of the future occurrence).

## II. Offset

Wife also contends the trial court erred in setting off the amount of Husband's retirement arrearage by the amount he overpaid in child support. We disagree.

The evidence at trial demonstrated Husband had no control over the monthly withholdings from his military pay. Not-

withstanding the automatic nature of the monthly deductions from Husband's pay, Wife contends she had the right to assume the payments were voluntary monthly gifts from her former spouse. The trial court heard both Husband and Wife on this issue and determined the payments were not voluntarily made by Husband and were not intended or received as a gift. We perceive no basis for questioning this assessment. *Pountain v. Pountain,* 332 S.C. 130, 135, 503 S.E.2d 757, 759–60 (Ct.App.1998) ("Because this court is not afforded the opportunity for direct observation of the witnesses, we must accord great deference to the trial court's findings where matters of credibility are involved."). Indeed, considering Husband had no control over the payments, the family court acted well within its equitable power in crediting those involuntary payments toward the amount of retirement benefits owed Wife.

## CONCLUSION

Wife is entitled to an amount equal to 15 percent of Husband's entire retirement pay to be offset by the amount he overpaid in child support.

**AFFIRMED IN PART AND REVERSED IN PART.**

HEARN, C.J., and CURETON, A.J., concur.