489 S.E.2d 212

**Patricia A. HATFIELD, Appellant,**

v.

**Lloyd E. HATFIELD, Respondent.**

**No. 2670.**

Court of Appeals of South Carolina.

Submitted May 6, 1997.

Decided June 9, 1997.

Rehearing Denied Aug. 28, 1997.

Marvin H. Dukes, III, of Dukes, Williams, Infinger & Meeks, Beaufort; James B. Richardson, Jr., of Svalina, Richardson & Larson, Columbia, for Appellant.

James H. Moss, H. Fred Kuhn, of Moss & Kuhn, Beaufort, for Respondent.

ANDERSON, Judge:

This is a domestic action for separate maintenance and support brought by Patricia A. Hatfield. She appeals the provisions of the family court order which denied her request for alimony and divided the marital property. We affirm in part and reverse in part.[1]

### *FACTS/PROCEDURAL BACKGROUND*

■ By complaint dated February 17, 1994, Wife sought "a Decree of Separate Maintenance," equitable distribution of the marital assets, and alimony.[2] Husband answered and counter-

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. The terms "alimony" and "separate maintenance" are synonymous. *See Ariail v. Ariail,* 295 S.C. 486, 491, 369 S.E.2d 146, 149 (Ct.App. 1988) (order on petition for rehearing) (noting § 20–3–140 authorizes the award of alimony in a separate maintenance action). *See also* Roy T. Stuckey and F. Glenn Smith, *Marital Litigation in South Carolina* 161 (South Carolina Bar—C.L.E. Division 1993) (there is no difference

claimed for a divorce on the ground of physical cruelty on March 28, 1994. Wife replied to the counterclaim on May 3, 1994. A merits hearing was held on September 21 and 22, 1994.

The family court judge issued a final order on February 14, 1995. The judge granted the parties a decree of separate support and maintenance "each from the other," and he ordered an equitable distribution of the marital property. However, because he found Wife had substantial assets and was capable of making a living, the judge ruled Wife was "barred from alimony." Further, the judge found no grounds were established by either party to justify the granting of a divorce.[3] Both parties moved to alter or amend the judgment.[4] The judge granted the motions in part and denied them in part by order dated July 19, 1995. Wife appeals.

## STANDARD OF REVIEW

▌ In appeals from the family court, the Court of Appeals has the authority to find the facts in accordance with its own view of the preponderance of the evidence. *Owens v. Owens*, 320 S.C. 543, 466 S.E.2d 373 (Ct.App.1996). This broad scope of review does not, however, require this court to disregard the findings of the family court. *Stevenson v. Stevenson*, 276 S.C. 475, 279 S.E.2d 616 (1981). Neither are we required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson*, 276 S.C. 524, 280 S.E.2d 541 (1981).

---

between alimony and separate maintenance and support, except that separate maintenance and support is what spousal support is called in actions for separate maintenance and support, and alimony is what it is called in divorce actions).

3. Husband was subsequently granted a divorce on the ground of one year's separation by order dated October 20, 1995.

4. Wife correctly asserted in her motion that her action was for separate maintenance and support, not a divorce. The judge noted in his order that the parties agreed that Wife had not requested a divorce.

## ISSUES

Did the family court err in:

(1) denying Wife alimony?

(2) finding Husband's inherited shares of stock were not transmuted?

(3) finding Wife possessed $65,000 in a savings account?

## LAW/ANALYSIS

### 1. ALIMONY

■ Wife contends the family court erred in denying her request for alimony and in failing to reserve the right to make a future award of alimony. We disagree.

■ This case was initiated as an action for separate maintenance and support, not a divorce. However, S.C.Code Ann. § 20–3–140 (Supp.1996) provides an award of alimony is to be made in actions for separate maintenance and support according to the factors applied in divorce actions. *Rivenbark v. Rivenbark*, 301 S.C. 175, 391 S.E.2d 232 (1990). The decision to grant or deny alimony is within the sound discretion of the family court judge, whose decision will not be disturbed on appeal absent an abuse of that discretion. *Williamson v. Williamson*, 311 S.C. 47, 426 S.E.2d 758 (1993); *Sexton v. Sexton*, 321 S.C. 487, 469 S.E.2d 608 (Ct.App.1996).

S.C.Code Ann. § 20–3–130(C) (Supp.1996) lists the factors the family court judge should consider in deciding whether to award alimony or separate maintenance and support.[5] The evidence relevant to these factors is as follows: The parties were married on February 23, 1985. This was the fourth

---

5. Section 20–3–130(C) lists the following factors: (1) the duration of the marriage and the ages of the parties at the time of the marriage and at separation; (2) the physical and emotional condition of each spouse; (3) the educational background of each spouse and the need for additional education; (4) the employment history and earning potential of each spouse; (5) the standard of living established during the marriage; (6) the current and reasonably anticipated income of each spouse; (7) the current and reasonably anticipated expenses of each spouse; (8) the marital and nonmarital properties of the parties; (9) the custody of any children; (10) marital misconduct or fault; (11) the tax consequences of the award; (12) the existence of support obligations to a former spouse; and (13) such other factors the court considers relevant.

marriage for each. They had been married nine years when Wife filed this action for separate maintenance and support. At the time of the merits hearing in 1994, Husband was 71 and Wife was 57. Although Husband suffered some medical problems with his leg which required surgery shortly after their marriage, both parties apparently were in good health at the time of the hearing.

Husband left high school to join the United States Marine Corps and saw combat in World War II. After he left the military, he obtained an associate's degree in aeronautical engineering, a pilot's license, and a number of licenses in aircraft frame and engine maintenance. He retired in 1985 as a journeyman aircraft mechanic after 38 years in the federal service.

Wife has a bachelor's degree in business administration and two associate's degrees. At the time she met Husband, Wife was a senior auditor in the civil service, GS–11, at the naval air station at Guantanamo Bay, Cuba. She was earning over $30,000 per year and receiving free housing, utilities, movies, and reduced meal prices. She had worked for the federal government for 18 years. Wife relinquished her position as auditor in September of 1985 and took a nonappropriated, contract position in Puerto Rico in order to be with her Husband. Wife allegedly was wrongfully terminated from this contract position on December 24, 1985. She settled a wrongful termination suit in 1987 for one year's salary. Wife testified that she was currently working as a part-time, temporary bank teller, and that she earned $301.00 every two weeks. Wife stated she had been unable to find full-time employment.

In support of her request for alimony, Wife alleged marital misconduct on the part of Husband during a trip to Dallas, Texas to see his divorced niece, Joni. Wife testified that Husband went to Dallas at the end of December 1992 to visit Joni and to help her with a home renovation. He stayed with Joni for about seven weeks. Wife stated Husband gave Joni oil massages while Joni was nude, and also gave massages to Joni's friend Suzanne and another woman. Wife admitted Husband voluntarily told her about the massages as soon as he returned home, and that he wanted to go to massage school. Wife complained Husband made unsecured loans

totalling $50,000 to Joni and Suzanne after he returned from Dallas.

Husband admitted giving Joni fewer than a dozen "full body" massages, giving one to her friend Suzanne, and two to a woman named Kathy who was a massage therapist. However, he maintained there was always someone else present and that there was nothing improper in his conduct. Husband testified that, as soon as he came home, he told his Wife about the massages and that he wanted to become a masseur. Husband acknowledged making the unsecured loans, but asserted they were made from his own property and with the prior knowledge and consent of Wife.

Husband in turn alleged several acts by Wife in regards to marital fault and to support his request for a divorce on the ground of physical cruelty. In one incident, he testified Wife was "haranguing" him about his trip to Dallas when she allegedly attacked him while he was in the bathroom. Wife threw a drink on him, which escalated into a physical confrontation when Husband tried to get out of the bathroom. Wife called the police and both parties were arrested. Husband also recounted an incident in which they were drinking creme de menthe cocktails when they threw their drinks at each other during an argument. Wife afterwards threatened Husband four or five times by telling him, "Don't you close your eyes tonight ... [b]ecause I'll cut your throat." Husband called the police on this occasion.

The family court judge found there was no proof that Husband's conduct "advanced beyond the massage level into an adulterous relationship," and there was mutual fault in the breakup of the marriage. In the judge's 56–page order, he divided numerous items of personal and real property in the equitable apportionment of the marital estate. The judge reviewed the financial declarations of the parties.[6] Wife's declaration reflected gross income of $1,735.31 per month and expenses of $978.01 per month.[7] The judge noted Wife testi-

---

6. Husband listed total property of $504,660 in his financial declaration. Wife's declaration did not give a total figure, but she states in her brief that her assets have a "liquidated" value of $245,000.

7. The judge's order lists the figures as $1,785.31 and $978.00, respectively.

fied at trial that she was working as a part-time bank teller and earned $301.00 every two weeks, and had claimed to have a total income of $829.00 per month, but this was inconsistent with her financial declaration. As for Husband, his financial declaration listed gross monthly income of $5,419.01 ($4,612.34 after taxes and insurance), and monthly expenses of $4,525.00. The majority of Husband's income comes from his government pension, social security, and dividends and interest.

The judge determined he would not award Wife alimony, concluding:

> The Court is of the opinion that [Wife] is an able bodied woman, well educated and capable of making a living. She has been in the workplace for many years and has held responsible positions. She has substantial assets as she leaves this marriage. Additionally[,] she is considerably younger than [Husband] and the Court will not award alimony in this case.

On Wife's motion to reconsider, the judge stated he would not reconsider the denial of alimony "[b]ased on the training, education, age, employ ability [sic], health, financial position, duration of marriage[,] and all other relative factors entering into alimony awards, as well as on the issues raised in" Wife's motion. The judge stated he "remains of the opinion that alimony is not warranted at this time." He noted that Wife had been "less than candid" about some of the financial evidence at the hearing.

The decision to grant or deny alimony is within the sound discretion of the family court judge. *Williamson v. Williamson, supra; Sexton v. Sexton, supra.* It is clear from his orders that the judge considered all of the pertinent factors in deciding whether to make an award of alimony in this case. We find no abuse of discretion in the judge's decision to deny Wife alimony and therefore affirm his ruling. As for Wife's contention that alimony should be reserved, this issue was never raised to the judge in Wife's Rule 59(e) motion and therefore is not preserved for our consideration. *Hickman v. Hickman,* 301 S.C. 455, 392 S.E.2d 481 (Ct.App.1990) (issue not presented to and passed upon by the trial court cannot be considered on appeal).

## 2. TRANSMUTATION OF HUSBAND'S STOCK SHARES

■ Wife next contends that certain stock inherited by Husband before their marriage was transmuted into marital property and should have been equitably apportioned.

The equitable apportionment statute, S.C.Code Ann. § 20–7–472 (Supp.1996), enumerates the factors that must be considered by the family court judge in determining the appropriate division of marital assets. Marital property is defined as all real and personal property acquired by the parties during the marriage which is owned as of the date of filing or commencement of marital litigation, regardless of how legal title is held. S.C.Code Ann. § 20–7–473 (Supp.1996). Property acquired by either party by inheritance or by gift from a party other than the spouse is nonmarital property. S.C.Code Ann. § 20–7–473(1) (Supp.1996).

■ In certain circumstances, nonmarital property may be transmuted into marital property if it (1) becomes so commingled with marital property as to be untraceable; (2) is titled jointly; or (3) is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties to make it marital property. *Peterkin v. Peterkin,* 293 S.C. 311, 360 S.E.2d 311 (1987). The phrase "so commingled ... as to be untraceable" is important because the mere commingling of funds does not automatically make them marital funds. *Wannamaker v. Wannamaker,* 305 S.C. 36, 406 S.E.2d 180 (Ct.App.1991).

■ Transmutation is a matter of intent to be gleaned from the facts of each case. The party claiming transmutation must produce objective evidence that during the marriage, the parties themselves regarded the property as the common property of the marriage. Such evidence may include: (1) placing the property in joint names; (2) transferring the property to the other spouse as a gift; (3) using the property exclusively for marital property; (4) commingling the property with marital property; (5) using marital funds to build equity in the property; or (6) exchanging the property for marital property. *Johnson v. Johnson,* 296 S.C. 289, 372 S.E.2d 107 (Ct.App.1988).

Husband inherited stock from a former wife. After her death, Husband did not have the stock placed in his name; instead, he left it in the name of his deceased spouse while he administered her estate. Upon his remarriage, Husband had the stock jointly titled in the names of both Husband and Wife; he testified he told her, "[A]s long as you're my wife, you'll have access to everything I've got." Husband testified that he intended for Wife to use his property while they were married, but he did not intend for her to have the stock in the event of a divorce. Husband stated the stock was worth about $50,000 when they married, but was now worth about $65,000. On cross-examination, Husband stated the primary reason he placed the stock in both names was so Wife would have no problems negotiating the stock in case he died, and that his will provided she would get everything upon his death.

Wife testified Husband told her when they first got married that he had inherited over $200,000 in stock from his former wife. Wife stated she helped Husband fill out the forms to have the stock changed to list ownership in both of their names. Wife testified that, in addition to the shares Husband inherited, they also owned other stock that was held jointly.

The family court judge found approximately $150,000 derived from Husband's deceased spouse's stock account had been spent during the marriage. The judge further found that since the stock originated from a source outside the marriage it was "fair and equitable" for Husband to receive the approximately $50,000 remaining in stock holdings.

On appeal, Wife contends the stock holdings should be deemed transmuted and equitably divided. This issue is not properly before the court for review. Although Wife did file a Rule 59(e), SCRCP motion for reconsideration of the judge's order, she did not specifically raise the issue of transmutation of the stock, and the judge did not rule on this issue in his order on reconsideration dated July 19, 1995. *Hamby v. Hamby*, 315 S.C. 518, 445 S.E.2d 656 (Ct.App.1994) (issue must be raised to and ruled on by trial court to be preserved for review); *Kneece v. Kneece*, 296 S.C. 28, 370 S.E.2d 288 (Ct.App.1988) (where party did not move pursuant to Rule 59 to amend the decree to consider the issue of transmutation, the issue was not properly preserved for review).

### 3. POSSESSION OF $65,000 SAVINGS DEPOSIT

■ Lastly, Wife argues the family court judge erred in finding that she still possessed $65,000 from the settlement of a civil action and in offsetting this amount against the $50,000 in stock retained by Husband. We agree.

Wife testified that she received $110,000 in 1986 in settlement of an action for the wrongful death of Guy Pinckney, her son from a former marriage. According to Husband, Wife initially deposited all of the settlement money into "Husband's checking account" (a joint account).[8] Later, $65,000 was transferred into "Wife's savings account." At one point, Wife stated the transfer of the $65,000 occurred after September of 1993, when Husband closed all of his accounts, but later testified the $65,000 had already been "disbursed" by September of 1993. Wife testified that she used $21,000 of the $65,000 deposit to buy three certificates of deposit in her name: two for $10,000 and one for $1,000.

Wife admitted she still possessed the $21,000 in certificates of deposit at the time of the hearing. Wife stated she did not recall what happened to the remaining $44,000, but that the accountant's records could identify the expenditures. When she was subsequently recalled as a witness, Wife testified the majority of the savings deposit went to pay credit card bills; she stated they had charges of $29,000 in one 24-month period that were purportedly incurred for treatment of Husband's medical problems with his leg.

Husband testified the amount of the settlement was $105,-000, not $110,000. He stated the transfer of $65,000 into Wife's savings account occurred in October, but he did not say what year. Husband testified he and Wife subsequently spent part of the $65,000 for expenses and investments by transferring money out of Wife's savings account and putting it into his checking account as needed.

The family court judge noted the testimony on the amount of the settlement was conflicting. He concluded $110,000 in settlement proceeds had been placed in and spent from a joint account, and that in October of 1993, $65,000 had been trans-

8. Although all accounts were joint, some were denominated as "Husband's" and some as "Wife's."

ferred into Wife's savings account. The judge found each party was entitled to one of the $10,000 certificates of deposit held in Wife's name, and that Wife was also entitled to retain the $1,000 certificate. However, the judge further found that, because the $50,000 in stock holdings from Husband's former spouse and the $65,000 savings deposit in Wife's name from the wrongful death action both "originated from sources outside the marriage," it was "fair and equitable" for Husband to receive all of the stock certificates and for Wife "to retain her [$65,000] savings deposit."

In her motion to reconsider, Wife argued that she no longer possessed the $65,000 savings deposit and asked the judge to review the property division and the denial of alimony in light of this alleged error. In his order dated July 19, 1995, the judge stated the financial evidence before the court was "extremely difficult" due to the conduct of the parties, particularly Wife, in removing money from marital accounts, and because of the parties' contradicting testimony as to expenditures and fund transfers. He concluded, "The Court is of the opinion that the $110,000 was deposited to a joint account and $65,000 removed by Plaintiff." The judge stood by his prior findings and denied reconsideration on this point.

In our own view of the preponderance of the evidence, we find that, at the time Wife filed this action for separate maintenance and support, only $21,000 remained of the $65,-000 that had been transferred into Wife's savings account; we note even Husband testified that the parties had continued to pay marital expenses out of this account as needed. The $21,000 consists of three certificates of deposit held in Wife's name which the judge had already divided between the parties. Accordingly, we hold the judge should not have offset the nonexistent $65,000 savings deposit against the stock retained by Husband. Thus, $44,000 ($65,000 minus $21,000) has been treated as a "credit" in Wife's favor in the apportionment of the marital estate when she does not possess these funds. Since Wife asserts the property division was otherwise substantially equal except as to items that were clearly non-marital, we find a proper apportionment is to allow the parties to retain the individual assets as distributed to them under the judge's order, and to require Husband to pay Wife the sum of

$44,000 in order to retain the assets distributed to him pursuant to the family court order.

## CONCLUSION

For the foregoing reasons, we affirm the judge's denial of alimony and affirm the award of the disputed stock to Husband. We reverse so much of the judge's order that states Wife has possession of a $65,000 savings deposit and hereby order Husband to pay Wife the sum of $44,000 while retaining the assets distributed to him under the judge's order.

**AFFIRMED IN PART and REVERSED IN PART.**

HOWELL, C.J., and GOOLSBY, J., concur.