FACTS

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Estate of Mary Emma Good Strickland, by and through her Personal Representative, 
 Alexandria B. Skinner,        Appellant,
 
 
 

v.

 
 
 
The Estate of Lloyd Joseph Strickland, by and through his Personal Representative, 
 Sandra S. Kelly, and Sandra S. Kelly, Individually,       
Respondent.
 
 
 

Appeal From Richland County
Berry L. Mobley, Family Court Judge

Unpublished Opinion No. 2005-UP-077
Heard December 8, 2004  Filed February 
 4, 2005

AFFIRMED

 
 
 
Jan L. Warner, of Columbia, for Appellant.
J. Mark Taylor, of West Columbia, for Respondent.
 
 
 

PER CURIAM:  This is an appeal from the 
 identification of marital property and apportionment of the marital estate.  
 We affirm.
FACTS
Lloyd and Emma Strickland were married in 1966.  
 It was the third marriage for both.  They remained married and lived together 
 until 1999 when Lloyd suffered a series of falls.  As a result of these falls, 
 Lloyd was moved to an assisted living facility near the family home.  The decision 
 to place Lloyd in an assisted living facility was made by Sandra Kelly, his 
 daughter and attorney-in-fact.  
After Lloyd was placed in the assisted living facility, 
 his daughter contributed $300 per month as support to Emma and continued paying 
 certain bills.  By March 2000, Emma was no longer able to care for herself and 
 was moved to a nursing home in Columbia by Alexandria Skinner, her granddaughter 
 and attorney-in-fact.  In May of 2000, Kelly had her father moved to a nursing 
 facility near her home in California.  
On June 9, 2000 Skinner, as attorney-in-fact for the 
 Wife, filed this action in the family court.  She named Kelly, individually 
 and as the Husbands attorney-in-fact, as a defendant as well as the Husband.  
 Skinner complained that Lloyd was not adequately providing for Emmas expenses 
 and sought equitable division of the marital estate.  She requested a restraining 
 order to preserve the Husbands assets, an order of separate support and maintenance, 
 equitable distribution, and attorneys fees.  
The Husband died three weeks later on June 30, 2000.  
 He was 91 years old.   The Wife died on June 25, 2001.  She was 85.    After 
 the death of the Wife, Lloyds estate moved for dismissal of the action for 
 lack of subject matter jurisdiction.  The motion was denied.  The action proceeded 
 with the estates of the Husband and Wife substituted as parties, with Skinner 
 as the personal representative of the estate of the Wife and Kelly as the personal 
 representative of the estate of the Husband. 
After a complex procedural history, a final hearing 
 was held and the family court heard testimony from Skinner, Kelly, and Mark 
 T. Hobbes, a certified public accountant.  The court found assets in the Husbands 
 name were valued at $512,251.66 and the assets in the Wifes name were valued 
 at $519,309.00 as of the time of the filing of this action.  The court determined 
 the entire amount was deemed marital property.  It ordered equal equitable distribution 
 of the marital estate, which caused the Wifes estate to owe $3,528.50 to the 
 Husbands estate.  Following the family courts denial of her motion to reconsider, 
 the Wifes estate appealed to this court.
STANDARD OF REVIEW
In appeals from the family court, this court has 
 authority to find the facts in accordance with our own view of the preponderance 
 of the evidence.  Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154, 
 157 (1996).  However, this broad scope of review does not require us to disregard 
 the findings of the family court.  Greene v. Greene, 351 S.C. 329, 335, 
 569 S.E.2d 393, 397 (Ct. App. 2002).  We are mindful that the family court judge, 
 who saw and heard the witnesses, was in a better position to evaluate their 
 credibility and assign comparative weight to their testimony.  Miles v. Miles, 
 355 S.C. 511, 516, 586 S.E.2d 136, 139 (Ct. App. 2003).
The family court has broad discretion in determining 
 how marital property is to be valued and distributed.  Murphy v. Murphy, 
 319 S.C. 324, 329, 461 S.E.2d 39, 41 (1995).  Therefore, the family court may 
 use any reasonable means to divide the property equitably, and its judgment 
 will only be disturbed where abuse of discretion is found.  Id. at 329, 
 461 S.E.2d at 41-42.
LAW/ANALYSIS
The Wifes estate argues the family court erred 
 in finding all of the assets titled in her name were marital property.  We disagree. 
 [1] 
Marital property is defined as all real and 
 personal property acquired by the parties during the marriage that is owned 
 as of the date of filing or commencement of marital litigation, regardless of 
 how legal title is held.  S.C. Code Ann. § 20-7-473 (Supp. 2004).  Generally, 
 property acquired by either party before the marriage constitutes nonmarital 
 property.  However, nonmarital property may be transmuted into marital property.  
 § 20-7-473(2).  Whether property has been transmuted is a matter of intent to 
 be gleaned from the facts of each case.  Hatfield v. Hatfield, 327 S.C. 
 360, 368, 489 S.E.2d 212, 217 (Ct. App. 1997).  The party claiming the property 
 was transmuted must produce objective evidence that during the marriage, the 
 parties themselves regarded the property as common property.  Id.  This 
 evidence may include:  (1) placing the property in joint names; (2) transferring 
 the property to the other spouse as a gift; (3) using the property exclusively 
 for marital property; (4) commingling the property with marital property; (5) 
 using marital funds to build equity in the property; or (6) exchanging the property 
 for marital property.  Id.
The Wifes estate argues the marital residence in 
 Summerville, South Carolina was not marital property because it was purchased 
 from the proceeds of property the Wife had owned prior to the marriage.  The 
 family court determined the residence was transmuted because it had been commingled 
 with the property of the parties.  While the marital residence was only titled 
 in the Wifes name, we find sufficient evidence to support the family courts 
 conclusion that the property was transmuted.  See Corbett v. Corbett, 
 313 S.C. 184, 187, 437 S.E.2d 136, 138 (Ct. App. 1993) (stating the manner in 
 which title is held is irrelevant in determining whether property is marital).  
 The residence was used exclusively as the marital home for eleven years.  
 Additionally, evidence in the form of checks and notations showed that the Husband 
 paid at least $36,000 towards satisfying the note on the house.  This evidence 
 demonstrates a specific intent by the parties to treat the marital residence 
 as marital property.
The Wifes estate asserts the family court should 
 have excluded the checks showing Lloyd had retired $36,000 of the house debt 
 because the Husbands estate failed to produce them during discovery.  First, 
 we find this argument is not properly before this court because the Wifes estate 
 failed to include this issue in its statement of the issues on appeal.  See 
 Rule 208(b)(1)(B), SCACR (Ordinarily, no point will be considered which is 
 not set forth in the statement of the issues on appeal.).  Furthermore, we 
 find no reversible error in the family courts admission of the checks.  The 
 decision of what kind and whether to impose discovery sanctions is left to the 
 sound discretion of the trial court.  Fields v. Regl Med. Ctr. Orangeburg, 
 354 S.C. 445, 457, 581 S.E.2d 489, 495 (Ct. App. 2003).  In deciding what sanction 
 to impose, the circuit court should weigh the nature of the interrogatories, 
 the discovery posture of the case, willfulness, and the degree of prejudice.  
 Id.  The burden is on the appealing party to show the trial court abused 
 its discretion in its decision regarding the imposition of sanctions.  Halverson 
 v. Yawn, 328 S.C. 618, 621, 493 S.E.2d 883, 884 (Ct. App. 1997).
The attorney for the Wifes estate explained that 
 although Kelly had sent him copies of the checks, they were misplaced in a file.  
 Additionally, while the checks themselves were not provided prior to trial, 
 an exhibit list was exchanged the day prior to trial listing two checks regarding 
 the marital residence.  Although on appeal, the Wifes estate argues that it 
 was prejudiced by the failure to produce the copies of the checks because it 
 was not given the opportunity to investigate the authenticity of the checks 
 or whether they were used for the purposes asserted by the Husbands estate, 
 it failed to make this argument to the trial court.  Accordingly, it is not 
 preserved for our consideration.  See Wilder Corp. v. Wilke, 330 
 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (It is axiomatic that an issue cannot 
 be raised for the first time on appeal, but must have been raised to and ruled 
 upon by the trial judge to be preserved for appellate review.).  Considering 
 the Husbands estates explanation that his failure to produce was by mistake 
 rather than bad motive and the Wifes estates failure to demonstrate prejudice, 
 we hold the family court did not abuse its discretion in allowing the copies 
 of the checks into evidence.  
We also find that the family court did not err 
 in including the other assets titled in the Wifes name in the marital estate.  
 Skinner did not dispute that the Husband had given her grandmother an annuity 
 in 1994 in the sum of $277,300.00.  The Wife had cashed this and added the proceeds 
 to her assets.  The Wifes income included increased Social Security payments 
 due to the Husbands employment.  In addition, as the Wifes estates expert 
 witness testified, the Wife expended considerable sums on household expenses 
 in support of the marriage over the years.  Thus, we conclude the family court 
 did not err in valuing the marital estate at $1,031,561.00.  
The Wifes estate also argues the family court 
 improperly apportioned the marital estate.  We disagree.  
The family court must consider fifteen factors 
 and give each weight as it finds appropriate.  S.C. Code Ann. § 20-7-472 (Supp. 
 2004).  On review, we look to the fairness of the overall apportionment; if 
 the end result is equitable, it is irrelevant that we might have weighed specific 
 factors differently than the family court.  Jenkins v. Jenkins, 345 
 S.C. 88, 100, 545 S.E.2d 531, 537 (Ct. App. 2001).  
The Wifes estate takes particular issue with the 
 family courts finding that the husband had all earned income during the marriage 
 while [the Wife] contributed passive income from alternative sources.  The 
 Wifes estate argues no evidence supports this finding.  We hold the Wifes 
 estate has mischaracterized this finding.  The family court did not belittle 
 the Wifes contributions to the marriage.  It recognized that the wife had income 
 from passive sources such as investments and social security and also contributed 
 to the marriage as the primary homemaker, but also found she was not a wage-earner.  
 Skinner acknowledged that her grandmother had not held outside employment during 
 the course of her marriage to the Husband.  
Although the evidence as to the Husbands employment 
 is sketchy, there is evidence in the record to support the family courts determination 
 that the Husband was the only wage earner.  Kelly stated her father worked hard 
 all of his life.  The certified public accountant the Wifes estate presented 
 as an expert witness, Mark Thomas Hobbs, testified that the Wifes social security 
 income probably came from drawing upon the Husbands social security.  He acknowledged 
 that the Husbands higher social security income indicated outside employment.  
 In addition, he recognized that the Husband had a pension income, which also 
 indicated past outside employment.  
We disagree with the Wifes estates assertion that 
 the Husband did not contribute to the marriage.  Although Kelly recognized that 
 her father was extremely frugal, there is no evidence in the record that he 
 lived off of the Wife during the course of the marriage.  Kelly testified the 
 Husband paid certain household bills, including utilities, from his checking 
 account and gave the Wife $300.00 a month for additional expenses.  Kelly continued 
 these payments after the Husband went into the assisted living facility.  In 
 addition, the Husband paid $36,000 toward the mortgage of the marital residence.  
 Furthermore, at the time of the filing of the action, the Husband had assets 
 in his name valued at $512,251.66.  There is no indication in the record these 
 assets came from the Wife.  Instead, it is undisputed the Husband gave the Wife 
 a $277,300.00 annuity.  
In determining the parties were entitled to equal 
 equitable apportionment of the marital estate, the family court carefully considered 
 and set-down in its order its conclusions on the relevant factors.  We find 
 no error in this determination.  
CONCLUSION
For the reasons discussed, the identification of marital property and apportionment 
 ordered by the family court is
AFFIRMED.
HUFF, KITTREDGE, and BEATTY, JJ., concur.  

 
 
 [1] We note the unusual procedural history of this case and agree with 
 the family court that the death of the parties does not terminate a proceeding 
 regarding property rights because the courts jurisdiction vested at the time 
 the suit was filed.  See Hodge v. Hodge, 305 S.C. 521, 524, 
 409 S.E.2d 436, 438 (Ct. App. 1991) (holding that upon the institution or 
 filing of marital litigation, the marital estate vests and with respect to 
 the equitable division of marital property, marital litigation is not abated 
 by the death of a spouse).  However, we are disconcerted that this action 
 was initiated and litigated by the parties attorneys-in-fact and then the 
 personal representatives of their estates when the parties themselves had 
 not suffered from marital discord.  Considering the aging population and the 
 proliferation of second marriages, the possibility is increasing for marital 
 litigation brought by the children from prior marriages of the parties.  As 
 the Wifes counsel stated at oral argument, this type of litigation could 
 be used by the children of one spouse to obtain a share of the other spouses 
 non-probate assets, which are not eligible for an elective share.    While 
 we question whether such litigation is within the purpose of the family courts 
 jurisdiction, we must look to the legislature to place limits on that type 
 of action.