THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Douglas N. Yarborough, Respondent,
 
 
 

v.

 
 
 
 Anita J. Yarborough, Appellant.
 
 
 

Appeal from Lexington County
Richard W. Chewning, III, Family Court Judge

 Unpublished Opinion No. 2005-UP-601 
Heard October 12, 2005 Filed November 30, 2005

AFFIRMED as MODIFIED

 
 
 
 Jon T. Clabaugh, Jr. and Kathryne A. Shelton, of Columbia, for Appellant.
 Cynthia B. Castengera of Newland, N.C., and Michael Jeffcoat, of Columbia, for Respondent.
 
 
 

PER CURIAM: Anita J. Yarborough appeals the family court order: denying her custody of the minor children, limiting her visitation, calculating child support payments, dividing the debt and marital assets, refusing alimony and rejecting her demand for assistance with attorneys fees and guardian ad litem fees.   We affirm as modified.
FACTS
Anita and Douglas Yarborough were lawfully married on June 20, 1993 in Lexington County, South Carolina.  The parties ceased living together in January of 2001.  A divorce was granted on October 14, 2003, to Douglas Yarborough on the basis of continuous separation without cohabitation for one year.  
Originally, Anita had custody of their children, Adam and Katilin, and Douglas paid child support.  Douglas left Anita and the children in the marital home.  When asked why he left the children with their mother, he stated, I was hoping that, if I left, if I moved out in January [2001], that she would stay here in South Carolina so I could see my kids. However in August of 2001, Anita and the children moved to Humble, Texas to live with her parents.  Anita claimed the move was for financial reasons, because she was unemployed.  Douglas had telephone visitation every Tuesday and Thursday night from 7 p.m. to 8 p.m. Eastern Standard Time and visitation privileges every Christmas and summer.
In Texas, the mother and children lived in a trailer with Anitas mother, step-father, sister, brother and the brothers girlfriend.  Adam began experiencing some behavior problems.  Anita had difficulty getting the children home to talk to their father at the scheduled time.  She blamed this on the fact that Texas was in the Central Time Zone.  Consequently, telephone visitation became sporadic.  In November of 2000, seven-year-old Adam crashed an ATV into Billy Harwells truck.  This caused significant damage to the vehicle.  He was neither supervised at the time of the accident nor taken to the doctor after the crash took place.  Adams father did not know about the accident until Mr. Harwell contacted him.  In August of 2002, Anita and her brother, Rusty, were involved in a physical altercation at the house in Texas.  Anita called the police, and Rusty was thrown out of the house by his mother.  According to Adam, Rusty grabbed Adam by the neck and swung him around the room.  Douglas was unaware of this event until Adam later told him about it over the phone.  
Douglas scheduled a time to pick up his children on December 21, 2002, for Christmas vacation.  Douglas and Anita planned to meet halfway at a police station in Mobile, Alabama, but Anita was over two hours late. Douglas could not get in touch with her or her family, and Anita did not attempt to contact him.  After filing a police report, he returned to South Carolina.   
An Ex Parte Order granting an Emergency or Expedited Hearing was filed on January 15, 2003.  Douglas received custody of his children.  On February 27, 2003, an order was filed awarding temporary custody of the children to the father until the final divorce proceeding.  
The family court granted custody to the father, concluding this would be in the best interest of both children.  The mother was granted telephone visitation, Christmas, summer and spring break visitation.  Furthermore, she is allowed to see her children for reasonable periods of overnight visitation when she is in South Carolina.  The family court imputed a $930.00 per month minimum wage to Anita, who was unemployed at the time of the trial.  Anita owes $304.85 per month in child support to be paid to the Clerk of Court of Lexington with a 5% handling fee.  The court found the marital debt, property and Guardian ad Litem fees should be divided in half.  Additionally, the court found each party responsible for their own attorneys fees.
STANDARD OF REVIEW 
 In family court appeals, this court may find facts in agreement with its own view of the preponderance of the evidence. Lanier v. Lanier, 364 S.C. 211, 612 S.E.2d 456 (Ct. App. 2005); Nasser-Moghaddassi v. Moghaddassi, 364 S.C.182, 612 S.E.2d 707 (Ct. App. 2005).  Regardless of our broad scope of review however, we are not required to disregard the family courts findings.  Bowers v. Bowers, 349 S.C. 85, 561 S.E.2d 610 (Ct. App. 1999); Badeaux v. Davis, 337 S.C. 195, 522 S.E.2d 835 (Ct. App. 1999).  Nor do we ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate the credibility and assign comparative weight to the witnesses testimony.  Lacke v. Lacke, 362 S.C. 302, 608 S.E.2d 147 (Ct. App. 2005); Murdock v. Murdock, 338 S.C.322, 526 S.E.2d 241 (Ct. App. 1999); see also Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 445, 477 S.E.2d 476 (Ct. App. 1996) (noting that because the appellate court lacks the opportunity for direct observation of witnesses, it should accord great deference to the family courts findings where matters of credibility are involved).  An appellate court should be reluctant to substitute its own evaluation of the evidence on child custody for that of the trial court. Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996).  However, when the best interests of the child are compromised by the family courts visitation schedule, we have the ability to use de novo review.  Arnal v. Arnal, 363 S.C. 268, 609 S.E.2d 821 (Ct. App. 2005).  The burden weighs heavily on the appellant who must convince this Court the family court committed error.  Skinner v. King, 272 S.C. 520, 522-523, 252 S.E.2d 891, 892 (1979). 
DISCUSSION
I. Custody
Anita Yarborough argues that the family court erred in awarding custody to Douglas Yarborough.  We disagree. 
The most important and controlling factor in every custody dispute is the best interests of the children.  Shirley v. Shirley, 342 S.C. 324, 330, 536 S.E.2d 427, 430 (Ct. App. 2000).  Parapella v. Parapella, 340 S.C. 186, 189 531 S.E.2d 297, 299 (Ct. App. 2000).  However many aspects must be considered to determine the best interests of a child and thus the outcome of a child custody case.  Pirayesh v. Pirayesh, 359 S.C. 284, 596 S.E.2d 505 (Ct. App. 2004).  In reaching a determination as to custody, the family court should consider how the custody decision will impact all areas of the childs life, including physical, psychological, spiritual, educational, familial, emotional and recreational aspects.  Shirley, 342 S.C. at 330, 536 S.E.2d at 430.  Additionally, the court must assess each partys character, fitness and attitude as they impact the child. Id.  The Pirayesh court noted that the opinions of third parties (including the guardian, expert witnesses, and the children) should be taken into account when determining custody.  Furthermore this court must consider that in South Carolina, there is a presumption against moving children out of the state.  Rice v. Rice, 335 S.C. 449, 454, 517 S.E.2d 220, 222 (Ct. App. 1999).  The court must determine if moving is in the best interest of the child. Id.
Extensive testimony was presented regarding the parenting habits and practices of both parents.  Jack Justice, a licensed social worker, and Sheila M. Robinson, the Guardian ad Litem, testified.  Justice, a therapist at the Columbia Counseling Center, was qualified as an expert witness in the field of therapy.  Justice met with Adam, Katilin and Douglas approximately ten times before the trial.  Justice testified that [Douglas Yarborough] is a good father.  I think he has his childrens best interest [sic] at heart.  Moreover, Robinson reported that both (Anitas and Douglass) homes were suitable, and that both were good parents.  Daycare workers vouched for the improvement in Katilins behavior since moving in with her father.  Adam made excellent progress in school after relocating.  The family court did not err in determining that the best interests of the children would be served by giving the father custody.  
II. Limiting visitation 
Anita Yarborough appeals the visitation parameters set forth by the trial court, specifically the time and type of visitation and transportation costs. 
As always when awarding visitation, the controlling consideration is the welfare and best interest[s] of the child[ren].  Woodall v. Woodall, 322 S.C. 7, 12, 471 S.E.2d 154, 158 (1996).  A family court may impose upon a non-custodial parent such conditions and restrictions on visitation privileges as the court in its discretion, thinks proper. Frye v. Frye, 323 S.C. 72, 448 S.E.2d 586 (Ct. App. 1994).  [D]etermining and limiting visitation rights is in the broad discretion of the trial judge, and in the absence of a clear abuse of such, the order granting, denying or limiting visitation rights will not be disturbed. Graham v. Graham, 253 S.C. 486, 171 S.E.2d 704 (1970).  Furthermore this court must recognize that [v]isitation arrangements are not allowed that involve excessive shuttling of the children between parents.  Mixson v. Mixson, 253 S.C. 436, 171 S.E.2d 581 (1969).  Thus, when the best interests of the children are compromised by the family courts visitation schedule, we have the ability to use de novo review.  Arnal, 363 S.C. at 291, 609 S.E.2d at 833 (Ct. App. 2005).
Anita chose to live in Humble, Texas, which is roughly seventeen hours and one thousand miles away from her children.  The trial court awarded four weeks of visitation with Anita in Texas, divided into two (2) two-week visits.  Under these circumstances, this constitutes excessive shuttling of the children between South Carolina and Texas.  As an alternative, Anita should have one five-week period of visitation each summer, not to include the week after school ends or the week before school begins.  Anita shall provide Douglas with notice of which weeks she is choosing for visitation via registered mail no later than April 1 of each year.  In addition, we find it to be in the childrens best interests for Anita to have telephone contact.  Anita is entitled to telephone contact beginning at 8:30 p.m. Eastern Standard Time each Tuesday and Thursday.  Anita is responsible for initiating the calls.  During the five (5) weeks of summer visitation with Anita, Douglas shall have the same right of telephone contact with the children.  During this time Douglas will be responsible for initiating the calls.  This court declines to further modify the visitation. 
III. Calculating child support 
Anita argues that the family court erred in imputing her child support obligation.  We disagree. 
S.C. Code Ann.  § 20-7-90 (1976) provides in part:

 (A) Any able-bodied person capable of earning a livelihood who shall, without just cause or excuse, abandon or fail to provide reasonable support to his or her spouse or to his or her minor unmarried legitimate or illegitimate child dependent on him or her shall be deemed guilty of a misdemeanor . . . .

The factors to be considered in establishing child support obligations include: both parents income, ability to pay, education, expenses, and assets, as well as the facts and circumstances surrounding each case.  Mitchell v. Mitchell, 283 S.C. 87, 320 S.E.2d 706 (1989).  The award should be an amount that the parent can pay and still meet his or her own needs. Smith v. Delaney, 286 S.C. 583, 334 S.E.2d 821 (Ct. App. 1985).  
The judge used the South Carolina Child Support Guidelines to calculate the amount of child support Anita owed each month.  According to Guidelines, Section III (A) (5):

 If the court finds that a parent is voluntarily unemployed or underemployed, it should calculate child support based on a determination of potential income which would otherwise ordinarily be available to the parent.

Prior to moving to Texas, Anita worked for the State of South Carolina.  After her move, she worked for a temporary agency and for her mother.   Although at trial she was unemployed, the judge correctly imputed that Anita was able to earn a minimum wage.  Anita has a duty to support her children.  
IV.  Division of debt and marital assets
Anita Yarborough contends that the family court erred in the division of the marital property and debts.  We disagree. 
The doctrine of equitable distribution is based on a recognition that marriage is, among other things, an economic partnership. Mallett v. Mallett, 323 S.C. 141, 150, 473 S.E.2d 804, 810 (Ct. App. 1996). Upon dissolution of the marriage, marital property should be divided and distributed in a manner which fairly reflects each spouses contribution to its acquisition, regardless of who holds legal title. Morris v. Morris, 335 S.C. 525, 531, 517 S.E.2d 720, 723 (Ct. App. 1999).  In making an equitable distribution of marital property, the family court must, among other things: (1) identify the marital property, both real and personal, to be divided between the parties; (2) determine the fair market value of the identified property; (3) apportion the marital estate according to the contributions, both direct and indirect, of each party to the acquisition of the property during the marriage, their respective assets and incomes, and any special equities they may have in marital assets; and (4) provide for an equitable division of the marital estate, including the manner in which the distribution is to take place. Noll v. Noll, 297 S.C. 190, 375 S.E.2d 338 (Ct. App. 1988).
The only marital property owned by the parties is real property located at 5736 Augusta Highway in Leesville, South Carolina.  The value of this property is Thirty-One Thousand Five Hundred Dollars and 00/100 ($31,500.00).  The equity in the home is Five Thousand Five Hundred and 00/100 ($5,500.00).  Anita will receive a check from Douglas in the amount of Two Thousand Seven Hundred and Fifty Dollars and 00/100 ($2,750.00).  We affirm the family courts division of property and the manner of distribution.
V. Alimony
Anita asserts that the family court erred by not awarding her alimony.  We disagree. 
No issue may be raised for the first time on appeal, instead it must have been raised at trial in order to preserve the issue for appeal.  State v. Nichols, 325 S.C. 111, 481 S.E.2d 118 (1997).  Even if the issue were preserved, [t]he decision to grant or deny alimony is within the sound discretion of the family court judge, whose decision will not be disturbed on appeal absent an abuse of that discretion.  Hatfield v. Hatfield, 327 S.C. 360, 364, 489 S.E.2d 212, 215 (Ct. App. 1997) (citing Williamson v. Williamson, 311 S.C. 47, 426 S.E.2d 758 (1993)).  
The S.C. Code Ann. § 20-3-130(C)(Supp. 2003) states:

 The family court must consider and give weight in such proportion as it finds appropriate to the following factors in determining an award of alimony: (1) duration of the marriage and ages of the parties at the time of the marriage and divorce; (2)physical and emotional condition of the parties; (3) educational background and need for additional education of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated income of the parties; (7) current and reasonably anticipated expenses and needs of the parties; (8) marital and non-marital properties of the parties; (9) custody of the children; (10) marital misconduct or fault that affects the economic circumstances of the parties or contributes to the break-up of the marriage; (11) tax consequences of the reward; (12) prior support obligations of the parties; and (13) other factors the court considers relevant. 

Anita and Douglas were married for approximately ten years, living together for about eight and a half years.  Both were around thirty-one years of age at the time of the divorce.  The physical and emotional state of each party was not discussed at trial, although it was evident that both were physically healthy and neither one wanted to reconcile the marriage.  Anita testified that she graduated from college in 1993, although she never specified what college she attended or what degree she received.  Anita and Douglas have employment history, and each have the potential to find and continue employment based on their job history.  The standard of living as established during the marriage has remained unchanged for both parties.  After the birth of their children, Anita did not work.  Douglas has custody; therefore, her expenses should be less.  Fault was not an issue at the trial.  The trial judge did not abuse his discretion by failing to award Anita alimony. 
VI.  Attorneys fees and guardian ad litem fees
Anita appeals the failure of the family court to award her attorneys fees.  Additionally, she attacks the division of the Guardian ad Litem fees.
The award of attorneys fees is at the sound discretion of the family court. Stevenson v. Stevenson, 295 S.C. 412, 368 S.E.2d 901 (1988).  In deciding whether to award attorneys fees, the family court should consider: (1) the parties ability to pay their own fees; (2) the beneficial results obtained by counsel; (3) the respective financial conditions of the parties; and (4) the effect of the fee on each partys standard of living. E.D.M. v. T.A.M., 307 S.C. 471, 415 S.E.2d 812 (1992); Shirley, 342 S.C. 324, 536 S.E.2d 427.  Our Supreme Court has identified the following factors for determining a reasonable attorneys fee: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services. Glasscock v. Glasscock, 304 S.C. 158, 403 S.E.2d 313 (1991).
Although she is unemployed, Anita has marketable job skills.    Douglas has retained his job with Cooper Power Tools for over 6 years.  The father received custody of the two minor children thus maintaining his standard of living prior to the divorce.  Anita ameliorated her financial difficulty by moving in with her parents in Texas.  Neither partys standard of living changed as a result of the divorce, nor was the divorce granted on a fault basis.  This case was not overly difficult and did not present any novel issues of law.  Both parties have the ability to work and to pay attorneys fees.  Therefore, we find the family court did not abuse its discretion in deciding each party would bear his or her own attorneys fees and costs. 
An award of GAL fees lies within the sound discretion of the family court judge and will not be disturbed on appeal absent an abuse of that discretion. Shirley, 342 S.C. 324, 341, 536 S.E.2d 427, 436.  In the present case, the GAL completed an independent, balanced, and impartial investigation, as is required by the court.  The GAL reduced her rate to $110.00 per hour.  She conducted home visits in South Carolina and Texas.  She interviewed 23 witnesses.  Her fee requirement is fair and should not create a hardship.  
CONCLUSION
 Accordingly, the family courts ruling is 
AFFIRMED as MODIFIED.
ANDERSON, HUFF and WILLIAMS, JJ., concur