1782

CITY OF NORTH CHARLESTON, Appellant v. Betty GILLIAM and William Gilliam, Respondents.

(428 S.E. (2d) 720)

Court of Appeals

*James E. Gonzales*, of *Gonzales & Gonzales*, N. Charleston, *for appellant.*

*Frank M. Cisa,* of *Wood, Bargmann, Cisa, Styles & Dodds,* Charleston, *for respondents.*

Heard Jan. 22, 1992; Decided March 9, 1992.

Reh. Den. May 3, 1993.

GARDNER, Judge:

On November 13, 1989, the City of North Charleston (the City) condemned a 150 foot by 200 foot lot located at the intersection of Firestone Road and Calvin Street in North Charleston and belonging to Betty Gilliam and William Gilliam (the Gilliams). On appeal, the jury awarded the Gilliams $240,000. We reverse and remand.

We hold that the trial judge erred in overruling the City's objection to the testimony of the Gilliams' expert witness, Bamberg, to the effect that because Calvin Street was to be opened and extended in the Centre Pointe Mall the subject property's value, in his opinion, was increased from $160,000 to $240,000. The entire record before us supports the proposition that without the extension and widening of Calvin Street, the subject property would not be worth $240,000. The testimony by Bamberg was inadmissible because it was speculative and conjectural. The City objected to this testimony in a sidebar conference which is not of record; however, the City later entered into record its objection that this street had not been paved and it would never be paved. The trial judge, in numerous places in the record, held that the City had objected to this line of testimony and that the objection would run through the entire trial.

When Mr. Christopher Daniel Donato, another appraiser, was called to testify by the Gilliams, the following colloquy occurred between the City's attorney and the court:

> MR. GONZALES: Your honor, as to Mr. Donato that we mentioned yesterday. He's going to call the appraiser that we used in 1988. He will be attempting to testify as to the highest and best use of this property for commercial purposes. We wanted to again note our objection to that testimony.
> THE COURT: As you know, your objection runs through. You don't have to renew it every time.

MR. GONZALES: Yes. It's a different witness. I was just concerned about it.

THE COURT: Bring the jury in.

Again, in the City's motion for a new trial, its attorney said:

And as I say, the various grounds that we objected to are various—evidentiary denials and offerings that we preserved those objections on the record. We would reassert them, your honor.

We take this opportunity to admonish the bar that evidentiary rulings made at sidebar conferences, pretrial hearings, and other *in limine* hearings without the presence of a court stenographer, must be reiterated for the record when the case is called for trial. In this case, the trial judge protected the City by saying over and over again that its objections were preserved.

The foundation was laid for the objection when, as provided by statute, the City called the first witness of the trial, Linda H. Wannamaker, the head of its department of planning and management for the City. She testified that in December 1989, both the City and the developer abandoned the plans to widen and extend Calvin Street because the City had no funds to do it and the developer had no funds to do it and for the further reason that the developer had not bonded the pavement of the street, as required by the law and bond issues pursuant to a Tax Increment Financing Plan.[1] This testimony is close enough in time to establish the situation as it existed on November 13 of the prior month. The testimony is uncontradicted of record.

The law on this point was settled in the case of *South Carolina State Highway Department v. Westboro Weaving Co.*, 244 S.C. 516, 521, 137 S.E. 2d 776, 779 (1964). There the Court held, quoting *South Carolina State Highway Department v. Southern Railway Co.*, 239 S.C. 1, 121 S.E. (2d) 236 (1961), that improvements which might be made in the future for

---

[1] The testimony of record indicates that a TIF bond issue is one that requires a certain amount of private dollars guaranteed either through a letter of credit or a bond from a developer or actual construction on the ground in order to issue the bonds. The bonds issued by the City in this case were TIF bonds.

which funds have not been appropriated is too speculative and remote to be admissible.

The above error goes to the heart of the award of damages in this case and is reversible. Accordingly, the verdict of the jury and judgment entered theron is reversed and the case is remanded for a trial *de novo*.

Reversed and remanded.

BELL and CURETON, JJ., concur.