491 S.E.2d 583

**Mary Ann Haden LINDSAY, Respondent,**

v.

**Ross M. LINDSAY, III, Appellant.**

**No. 2708.**

Court of Appeals of South Carolina.

Heard June 4, 1997.

Decided Aug. 18, 1997.

Rehearing Denied Oct. 23, 1997.

---

330

332

Morris D. Rosen, of Rosen, Rosen & Hagood, Charleston, for appellant.

Robert L. Widener, of the McNair Law Firm, Columbia, for respondent.

CURETON, Judge:

This post-divorce action involves cross-claims of contempt for failure to comply with the terms of an agreement incorporated into a final decree of divorce. The trial court was called upon to interpret the order of the Honorable William K. Charles, Jr., filed on February 9, 1994, which incorporates an oral agreement of the parties. We affirm in part, reverse in part and remand.

## *Facts*

The 1994 order incorporated the following provisions of the parties' property settlement agreement:

E. *Additional Covenants of the Parties:*

The parties further agree to the following covenants and conditions, and the aforesaid division of property is subject to each party performing these covenants, as follows:

1. The wife agrees as follows:

(a) The wife will execute and deliver to the husband, within ten (10) days after the final decree in this case, a promissory note in the form and with the conditions used by the Georgetown Bar, including the right to anticipate payments and to declare the balance due on default in any installment, in the amount of $115,500.00, with interest at seven (7%) percent on the unpaid balance, accruing as of the date of the final decree of the Court and payable annually commencing one year from the date of final decree; principal will be payable in equal installments over a five (5) year period with the first installment of principal being payable six (6) months after the present audit of the South Carolina Tax Commission is completed and the Internal Revenue Service has completed its findings in connection with such audit, including any appeal by the husband; the six (6) month period not to commence until the payment by the husband of any taxes required by the South Carolina Tax Commission and the Internal Revenue Service under such audit. . . .

(iv) The wife will pay up to one-half of federal and state income taxes assessed up to $50,000.00, or a maximum of $25,000.00 in connection with the South Carolina Tax Commission audit now in progress, exclusive of the tax, interest and penalties on Caravel, Brickyard Plantation, and Motel Ventures; and,

(v) her interest in RML Limited Partnership.

2. The husband agrees as follows:

(a) The husband will hold the wife harmless from the payment of any state or federal income taxes including penalties and interest, if any, related to the following properties and audit:

(i) Caravel Properties

(ii) Motel Ventures

(iii) Brickyard Plantation

(iv) All taxes found by the South Carolina Tax Commission and the Internal Revenue Service to be due as a result of the audit presently in progress, except that the wife will pay one-half of all such taxes up to $50,000.00, or maximum of $25,000.00. This hold hold harmless is to cover all joint returns and returns of Wife's P.A. and Pension Plan pre-

pared by husband for all the years of the marriage as to all tax matters, including penalties and interest. Husband acknowledges that wife asserts that she is protected as to such taxes by the innocent spouse doctrine. This hold harmless agreement is additional protection for the wife.

(b) Such hold harmless agreement will be secured by the following:

(i) Assignment of the aforesaid note of $115,500.00 to King & Vernon, as Trustee, within twenty (20) days after final decree, who will hold said note until the husband has complied with the payment of any taxes assessed as a result of said audit referred to above, or if no taxes ares [sic] assessed, than [sic] at the time of the completion of audit and appeals.

(ii) Assignment to King & Vernon, as Trustee, of 40,000 shares of Plantation Federal Stock now owed [sic] by the Lindsay Family Trust, within twenty (20) days after final decree, which will hold said shares until the husband has complied with the payment of any taxes assessed as a result of said audit referred to above or, if no taxes are assessed, then at the completion of audit and appeals. Such properties will be reconveyed to the husband and trust immediately upon the completion of the audit set forth above and any appeals, and the payment of any taxes, if taxes are assessed. . . .

At the time of the execution of the agreement, the parties were in a dispute with the South Carolina Tax Commission regarding the under reporting of income and capital gains for the years 1988, 1989 and 1990. Between the approval of the agreement by the court in October 1993, and the filing of the divorce decree in February 1994, the parties reached an agreement with the State Tax Commission which required the parties to pay additional taxes in the amount of $67,555.88 for the years 1988, 1989 and 1990. In addition, the husband agreed to report additional capital gains of $686,863 on his 1993 individual tax return. The husband paid the additional taxes, reported the capital gains and paid the taxes thereon as agreed.

The present controversy arose when the wife refused to pay the husband the $25,000 for her share of the parties' back

taxes, deliver to the husband the $115,500 note, or make principal and interest payments on the undelivered note as provided in the agreement. The husband's complaint and rule to show cause requested the court hold the wife in contempt, require her to deliver the $115,500 note, make the principal and interest payments that would then be due under the note if it had been timely delivered, pay the $25,000 she owes as her share of back taxes paid to the state, and pay attorney fees and costs. The wife answered and counterclaimed requesting, *inter alia*, that the court hold the husband in contempt for failure to assign the $115,500 note and the Plantation Federal stock to her former attorneys to secure the hold harmless provision of their agreement, that the husband's complaint be dismissed because the assignment of the note and stock were conditions precedent to her obligation to deliver the note, make payments thereunder or pay the $25,000 for her share of state taxes. She also asked that the provision of the agreement requiring her to deliver the $115,500 note and pay the $25,000 taxes be set aside because of mistake of fact. Finally, she requested the husband pay her attorney fees and costs.

In its order of September 6, 1995, the trial court granted the husband's request that the wife pay the $25,000 tax contribution, but denied all other relief to both parties. The trial court found the language of the agreement concerning the "[w]ife's contribution to state tax liability appears to be clear and unambiguous." Nevertheless, the court concluded the wife's conduct not to be willful, and refused to hold her in contempt. As to the husband's request that the court order the wife to deliver the note and make the payments that would be due thereunder, the court construed the agreement to find that the claims of both the husband and wife were not ripe for determination. The court made no specific findings on the question of ambiguity as pertains to these provisions. Specifically, the court found:

> In sum, any payment under the note are [sic] not yet due and payable as there has not been a "completed" IRS finding in connection with the S.C. Tax Commission audit. For the same reasons, Wife cannot argue that she was harmed by Husband's failure to post stock as security for his indemnification agreement until a demand for back taxes

by the IRS is made. Consequently, the issues of the wife's failure to execute and deliver the note to attorneys King and Vernon and Husband's failure to post stock as security is not ripe for determination, nor is Wife's contention that the agreement was entered into as a result of a material, mutual mistake of fact.

## Issues on Appeal

The issues raised on appeal are:

(1) Whether the husband has appealed the trial court's finding that the wife's obligation to deliver the $115,500 note was not ripe for determination, and if so whether such ruling was error;

(2) assuming error in the previous question, did the trial court also err in not ordering the wife to make principal and interest payments that would now be due if the note had been delivered; and

(3) whether the trial court erred in not awarding the husband attorney fees and costs.

## Applicable Law

Unambiguous marital agreements will be enforced in accordance with their terms, while ambiguous agreements will be examined in the same manner as other agreements in order to determine the intention of the parties. *McDuffie v. McDuffie,* 313 S.C. 397, 438 S.E.2d 239 (1993). Whether or not an ambiguity exists in an agreement, however, must be determined from the language of the instrument. *White v. White,* 210 S.C. 336, 42 S.E.2d 537 (1947). Parole evidence may be allowed for the purpose of determining the intent of the parties and clearing up any ambiguity. *Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.,* 268 S.C. 80, 232 S.E.2d 20 (1977). The purpose of all rules of contract construction is to determine the parties' intention. The courts, in attempting to ascertain that intention, will endeavor to determine the situation of the parties, as well as their purposes at the time the contract was entered into. *Mattox v. Cassady,* 289 S.C. 57, 344 S.E.2d 620 (Ct.App.1986). Finally, an agreement that omits material terms may be determined to be unenforceable

for indefiniteness. *Ellis v. Taylor*, 316 S.C. 245, 449 S.E.2d 487 (1994).

Contempt results from the willful disobedience of a court order. Before a party may be found in contempt, the record must clearly and specifically show the contemptuous conduct. *State v. Bevilacqua*, 316 S.C. 122, 447 S.E.2d 213 (Ct.App.1994). In a proceeding for contempt for violation of a court order, the moving party must show the existence of a court order and the facts establishing the respondent's non-compliance with the order. The burden then shifts to the non-moving party to establish his defense and inability to comply with the court order. *Brasington v. Shannon*, 288 S.C. 183, 341 S.E.2d 130 (1986). Even though a party is found to have violated a court order, the question of whether or not to impose sanctions remains a matter for the court's discretion. *Sutton v. Sutton*, 291 S.C. 401, 409, 353 S.E.2d 884, 888 (Ct.App.1987).

It is a fundamental rule of law that an appellate court will affirm a ruling by a lower court if the offended party does not challenge that ruling. *Biales v. Young*, 315 S.C. 166, 432 S.E.2d 482 (1993). Failure to challenge the ruling "is an abandonment of the issue and precludes consideration on appeal." *Id.* at 168, 432 S.E.2d at 484. The unchallenged ruling, "right or wrong, is the law of the case and requires affirmance." *Buckner v. Preferred Mut. Ins. Co.*, 255 S.C. 159, 161, 177 S.E.2d 544, 544 (1970).

*Discussion*

Because the parties' requests to hold each other in contempt of court are based on their conflicting interpretations of the agreement, we must first determine the extent to which the court may go to construe the agreement. In its order, the trial court found the language of the agreement concerning the wife's obligation to pay the husband $25,000 to be unambiguous. The trial court made no similar finding as to the remainder of the contested provisions. As we read the trial court's order, however, it must necessarily have also treated the other provisions of the agreement as unambiguous. Regardless of how the trial court viewed these provisions, it

found the claims asserted by the parties were not ripe for determination.

As pertains to the wife's obligation to deliver the $115,500 note to the husband, the trial court concluded the parties contemplated an "IRS audit would automatically" follow the state audit and that any payments under the note will not become due until six months after an IRS audit in fact occurs. Therefore, the court reasoned that since there had been no IRS audit, the husband could not complain about the non-execution of the note by the wife, or the failure of the wife to make principal and interest payments thereunder. In like manner, the trial court reasoned the wife could not complain about the failure of the husband to post stock as security for the hold harmless agreement because the IRS had made no demand for back taxes. Finally, the court held the wife's claim that certain provisions of the agreement should not be enforced because they were entered into "as a result of a material, mutual mistake of fact" was likewise not ripe for determination.

The wife correctly notes in her brief that neither party has challenged certain trial court rulings and, thus, such rulings are the law of the case. *Biales v. Young,* 315 S.C. 166, 432 S.E.2d 482 (1993); *Dwyer v. Tom Jenkins Realty, Inc.,* 289 S.C. 118, 344 S.E.2d 886 (Ct.App.1986). Specifically the trial court's findings that the wife was not "harmed by Husband's failure to post stock as security for his indemnification agreement" and wife's "contention that the agreement was entered into as a result of a material, mutual mistake of fact are not ripe for determination," are unchallenged and are the law of the case.

The wife first takes the position the husband has not properly appealed the trial court's ruling on ripeness as affects the issues of which the husband complains. We have reviewed the husband's statement of issues numbered three through five and conclude he has sufficiently challenged the ripeness ruling by the trial court. Accordingly, this contention is without merit. *See Ramage v. Ramage,* 283 S.C. 239, 322 S.E.2d 22 (Ct.App.1984) (court may consider exceptions where the appealing party's position is "reasonably clear" from his arguments).

*Wife's Failure to Deliver the $115,500 Note*

As noted previously, we disagree with the wife's contention the husband has not appealed the trial court's ruling that the wife's failure to deliver the note is not ripe for determination. We also note that both parties were represented by able counsel, to include expert tax counsel for a period well in excess of a year prior to the time they reached their agreement. Both parties had available to them discovery. Tax counsel for both parties jointly represented the parties before the Tax Commission in conjunction with the audit, and presumably the wife's attorneys were in possession of all information that the husband and his attorneys were in possession of. Additionally, according to the divorce decree, on October 18, 1993, the first day the case was called for trial, the court allowed the parties to negotiate an agreement. Further, the court permitted the parties to appear before the court the next day at which time the wife's attorney announced their agreement to the court.

We hold the trial judge erred in finding the issue of the wife's obligation to deliver the note is not ripe for determination. Because we view this provision of the agreement as unambiguous, our interpretation of the agreement is confined to the language contained within the four corners of the instrument itself. *Mattox v. Cassady,* 289 S.C. 57, 61, 344 S.E.2d 620, 622 (Ct.App.1986). Inasmuch as this is an action in equity, we may make our own findings of fact. *Foreman v. Foreman,* 280 S.C. 461, 313 S.E.2d 312 (Ct.App.1984). Additionally, construction of an unambiguous agreement is a question for the court, and we are not required to give deference to the construction given the agreement by the trial court because no fact question is involved. Where a contract is capable of legal construction, the court's only function is to interpret its lawful meaning, discover the intention of the parties as found within the agreement, and give effect to it. *Ebert v. Ebert,* 320 S.C. 331, 465 S.E.2d 121 (Ct.App.1995). The court must enforce an unambiguous contract according to its terms regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully. *Ellis v. Taylor,* 316 S.C. 245, 449 S.E.2d 487 (1994). Under Section E of the parties' agreement, titled "Equitable Appor-

tionment and Division of Property," the wife agreed to execute and deliver the $115,500 note within ten days after the decree was entered. There is no condition precedent to the delivery of the note. Obviously, the delivery could not have been conditioned upon any prior performance by the husband because performance by the husband was not required to take place until twenty days after the decree was entered. Furthermore, the husband could not have assigned the note to the wife's attorneys as per the agreement until it was delivered to him. The trial court, therefore, erred in concluding the issue of the wife's delivery of the note to the husband was not ripe for determination.

*Principal and Interest Payments Under the $115,500 Note*

As pertains to the husband's argument regarding his entitlement to interest on the note, the trial court held he had not raised that issue at trial. We hold the court is in error. The husband's pleadings clearly state that the wife should be held in contempt for failure to "make the first payment of interest on said note on or before February 9, 1995, as required by the Order." Additionally, the husband testified he had received no interest payments from the wife. The divorce decree, of course, made no ruling on this claim. In his motion for reconsideration pursuant to Rules 52 and 59, SCRCP, the husband argues error in the failure of the court to require the wife "to deliver the promissory note and overdue interest." We hold the husband has preserved this issue for review. The agreement requires interest to accrue from the date of the decree and to be paid annually. Again, there is no mention of the audit as relates to this contractual obligation. We hold the trial court erred in ruling that the issue of interest was not raised at trial.

The provision regarding payment of principal under the note requires closer scrutiny. That provision required principal be paid in five annual installments with the first installment payable:

six (6) months after the present audit of the South Carolina Tax Commission is completed *and the Internal Revenue Service has completed its findings in connection with such audit, including any appeal by the husband; the six (6) month period not to commence until the payment by the*

*husband of any taxes required by the South Carolina Tax
Commission and the Internal Revenue Service under such
audit.*

The wife takes the position that even though the Tax
Commission has completed its audit, and the husband has paid
all taxes assessed by the audit, to include taxes paid on the
capital gains reported on his 1993 state and federal income tax
returns, no payment of principal and interest is due until and
unless the IRS conducts its own audit. The trial court, of
course, agreed with this position. Under this interpretation,
and as suggested by the husband, even the death of one of the
parties would not conclude the controversy between them,
because the IRS could elect to audit their returns for fraud
after the death of one of the parties. Such an arrangement
does not serve the strong public policy favoring final sever-
ance of all financial ties between divorcing parties. *Roe v.
Roe,* 311 S.C. 471, 482 n. 7, 429 S.E.2d 830, 837 n. 7 (1993).

The parties' agreement initially describes the audit as "the
present audit of the South Carolina Tax Commission." The
agreement further provides for the IRS to complete "its
findings in connection with such audit." Importantly, the
agreement does not provide for a separate federal audit, but
states ". . . and the Internal Revenue Service has completed
its findings in connection with such [state] audit." The agree-
ment further provides that the six month period shall not
commence to run until the husband pays any taxes assessed
by the Tax Commission and IRS "under such audit." Again,
the agreement does not provide for the payment of taxes
resulting from a separate audit to be conducted by the IRS.
We thus hold that the audit contemplated by the parties was
the state audit in progress at the time their agreement was
entered. Further, we interpret the agreement to provide that
the six month period for the payment of principal is to be
triggered by the payment of any taxes assessed by the state
and IRS as a result of the state audit. This interpretation is
buttressed by an analysis of the husband's hold harmless
agreement. That provision permits the wife's attorneys to
hold the note and stock until "the husband has complied with
the payment of any taxes assessed as a result of said audit
referred to above, or if no taxes are assessed, then at the time
of the completion of audit and appeals." Here, taxes were

assessed by the state and the husband filed his 1993 state and federal returns which resulted in the payment of additional state and federal taxes.

 The relevant portions of the parties' agreement are clear that once the husband has paid the taxes assessed by the state audit, to include any additional taxes that may be assessed by the IRS resulting from that audit, he is entitled to reconveyance of the stock and possession of the $115,500 note. The only pertinent question is whether it was within the contemplation of the parties that if the IRS chose to take no action on the parties' returns, the parties intended the wife would have no obligation to make principal and interest payments under the note. We do not think the agreement, when read as a whole, lends itself to such an interpretation. We thus hold the agreement simply does not deal with the contingency of what would happen if the IRS chose not to make a contemporaneous examination or audit of the parties' 1988–1990 returns.[1] As stated in *Ebert v. Ebert*, 320 S.C. 331, 339, 465 S.E.2d 121, 126 (Ct.App.1995):

> Ordinarily, a court will not supply omitted terms to an agreement, and an agreement where the parties did not agree to essential terms will simply not be enforced (citation omitted). However, where an agreement is silent as to a particular matter and because of the nature and character of the transaction an ambiguity arises, parol evidence may be admitted in order to supply a deficiency in the language of the contract. In such instance, parol evidence is admissible not to contradict the terms of the written agreement, but to determine the intent of the parties as to that particular matter.

 Because we hold the audit contemplated by the parties was the State Tax Commission audit in progress at the time of the execution of the contract and any contemporaneous examination by the IRS, we conclude it could not have been

---

1. The wife's counsel noted at trial:

We are not alleging that [husband] misled [wife]. We are alleging, first, that either both of them or certainly [wife] entered into an agreement under the firm assumption, intention, and understanding that an IRS audit was following the state audit and that all of this matter would be put to bed by the IRS audit.

within the contemplation of the parties that if the IRS did not do a contemporaneous or follow-up examination of their returns, the provisions of the agreement relative to the note would never come into existence. Where a provision of a contract does not provide a time for the doing of an act, the court will imply a reasonable time. *Ebert*, 320 S.C. at 340, 465 S.E.2d at 126.

We are convinced the wife's principal complaint is that she entered into a bad deal. Her primary reason for not delivering the note to the husband and not making payments thereunder is her concern that someday the IRS may audit their returns and assess a sum the husband is unable to pay but for which she will still be liable, without the benefit of security for the payment.[2] According to her, "you can't get blood out of a turnip." Regardless of the merit of the wife's concerns, under the posture of this appeal, she can neither object to the failure of the husband to secure the hold harmless agreement, nor complain about the inequity of the agreement.

We note that the delivery of the note to the husband and the payment of principal and interest due in no way relieves the husband from the hold harmless provision of the agreement. It is clear from the agreement that the hold harmless provision would survive any audit by the IRS for the tax years 1988–1990 and the payment of any taxes assessed therefrom. The hold harmless provision covers "all joint returns and returns of Wife's P.A. and Pension Plan prepared by husband for all the years of the marriage as to all tax matters, including penalties and interest." This is a much broader obligation than the obligation that is purportedly secured by the posting of security.

We hold the trial court erred in not requiring the wife to deliver the note as per the parties' agreement, and to make current interest payments thereunder. We remand to the family court the question of what period of time is reasonable

---

2. While the three year statute of limitation period has passed for the IRS to examine the 1988–1990 tax returns, both tax experts testified that there is no statute of limitation should the IRS find fraud was involved. The wife's tax expert testified that under the facts of this case, such a finding was possible. On the other hand, the husband's tax expert, while agreeing such a finding was possible, did not think a fraud finding practical.

for the parties to wait for an IRS audit before the wife is required to make principal payments under the note.

## Award of Attorney Fees

The husband also argues the trial court erred in not awarding him attorney fees and costs. The trial court premised its refusal to award fees and costs on its conclusion the failure of the wife to pay the $25,000 tax contribution was not willful, but makes no further findings on this issue. The husband states in his brief that "it is difficult to understand how the court could find that the failure to pay was not willful, since no attempt was made [by the wife or her attorney] to explain why it was not paid." An appeal of a decision regarding contempt should be reversed only if it is without evidentiary support or the trial court has abused its discretion. *Means v. Means*, 277 S.C. 428, 288 S.E.2d 811 (1982). Contrary to the husband's representation, the wife did indicate her reason for not paying the contribution. Her contention was that she did not know what portion of the $67,555.88 state assessment was for taxes assessed against the husband's business ventures for which she was not responsible. Even though presumably, the wife's counsel had access to the same tax information as the husband's attorney, she claimed that she learned this information for the first time at trial when the husband's tax counsel figured it during a court recess. Moreover, the wife claims in her pleadings she was entitled to have this obligation annulled because of a mistake of fact as to the terms of the agreement.

Contempt results from a willful disobedience of a court order. *Henderson v. Henderson*, 298 S.C. 190, 379 S.E.2d 125 (1989). A compensatory contempt award may include attorney fees. *Curlee v. Howle*, 277 S.C. 377, 287 S.E.2d 915 (1982). Under the circumstances of this case, we find no error in the trial court's refusal to hold the wife in contempt of court for failure to pay the $25,000 contribution. In like manner, we find no abuse of discretion in the failure of the trial court to award attorney fees. In any event, the decision to deny attorney fees is largely discretionary with the trial court and its decision will not be disturbed on appeal

absent an abuse of that discretion. *Smith v. Smith*, 308 S.C. 492, 419 S.E.2d 232 (Ct.App.1992).

The husband also argues error in the trial court's denial of attorney fees for failure of the wife to deliver the $115,500 note to the husband. As we concluded earlier, the wife was incorrect in her assertion that the husband was required to post security for the hold harmless agreement prior to her becoming obligated to deliver the note. Therefore, the trial court should have either required her to deliver the note or entertained her claim that the provision was unenforceable because it was entered into by the parties by mistake. Under the posture of this appeal, we may not consider the wife's claim of mistake of fact because she has not challenged the trial court's finding that she was not harmed by the husband's failure to secure the hold harmless agreement, and the court's further finding that the issue is not ripe for decision. We are now faced with the decision of whether the husband is entitled to attorney fees as this case is presented to us. The husband brought this action as one for contempt. The remedies for contempt include reimbursement of complainant for losses sustained, including attorney fees. *In re: General Motors Corp.*, 61 F.3d 256 (4th Cir.1995); *cf. Toyota of Florence, Inc. v. Lynch*, 314 S.C. 257, 442 S.E.2d 611 (1994). The trial court did not, however, hold the wife in contempt, and the husband has not appealed the court's refusal to hold the wife in contempt based on the wife's failure to deliver the note. Accordingly, we have no basis for awarding attorney fees on this issue. *Curlee v. Howle*, 277 S.C. 377, 287 S.E.2d 915 (1982).

The order of the trial court is affirmed in part, reversed in part and remanded to the trial court to take testimony as deemed necessary and enter an order not inconsistent with this opinion. The court shall also award appropriate costs to the husband.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

ANDERSON and STILWELL, JJ., concur.